WILLIS R. AUSTIN, ADMINISTRATOR, vs. WILLIAM B. BRISTOL,
EXECUTOR.

A will contained the following bequest:—" Upon  the decease of m y said wife
    (to whom the testator had given  a life estate in the property,) I give all my,
    said estate to such of my children as may be living at the time of her decease'
    and to the issue of those who may have deceased, and to their heirs and
    assigns forever, to be  equally  divided  between  them ; the issue of such
    deceased children to take per stirpes and not per capita." The testator left a
    widow, four  children, and one  grandchild, the daughter of a daughter who
    had died before his death.   This grandchild died before the death of the widow.
    Held that she took an immediate vested interest under the will, and that her
    administrator was entitled, after the death  of the widow, to one-fifth of the
    estate of the testator.

The will contained the following further provision :—" If none of my children or their issue shall be living at the time of my wife's decease, I then give all my estate to W." Held that the only effect of this clause was to divest the interest upon the contingency happening, and that it did not operate to prevent its vesting.

While it is true that in regard to the construction of wills, former cases, unless *ad idem*, are of little account, yet in respect to clauses of frequent occurrence in wills it is important that there should be uniformity of construction.

AMICABLE SUBMISSION, upon the following agreed statement of facts ; brought to the Superior Court in New Haven County.

Enos B. M. Hughes, of New Haven, died in October, 1864, leaving a will, the parts of which material to the present question are as follows :—

"After the payment of my just debts, funeral charges, and the expenses of settling my estate, I give, devise and bequeath all the estate, both real and personal, which I now have, or which I may have at the time of my decease, to my beloved wife, Louisa W. B. Hughes, for her life, to be used in the support of herself and my children, but subject to the provisions hereinafter mentioned.

" Upon the decease of my said wife, I give all my said estate to such of my children as may be living at the time of her decease, and to the issue of those who may have deceased, and to their heirs and assigns forever, to be equally divided among them ; the issue of such deceased children to take per stirpes, and not per capita. * *

" If none of my children or their lawful issue shall be living at the time of the decease of my said wife, I then give, devise and bequeath all my said estate to William L. Wight, of Virginia, and to Grace H. Wight, his wife, for their lives and for the lives of the survivor of them. * * *

" In case of the decease of my said wife before my decease, then upon my decease all my estate, both real and personal, shall be equally divided among my children then living, and the issue of those who have deceased, their heirs and assigns forever ; the issue of such deceased children to take per stirpes, and not per capita.

" And in case any of them shall die unmarried and intes-

VOL. XL.—16

tate, and without lawful issue living at the time of his or her decease, then his or her share shall in like manner be equally divided between his or her brothers and sisters then living, and the issue of such as may then have deceased, and their heirs.

" And if my said children shall all die without leaving lawful issue, and unmarried and intestate, then the estate of such last survivor shall belong to the said William L. Wight and wife, for their lives and the life of the survivor of them, and after the decease of such survivor, to the children of said Grace H. Wight, and their heirs and assigns forever.

" In case my said wife shall survive all my children, and their lawful issue, and the said Wight and his wife, and the lawful issue of said Grace, then my said wife may have the absolute disposal of all my said estate, by her will or otherwise, as she may deem expedient."

Mr. Hughes left surviving him four children, to wit, Mary H. Wells, Cornelia H. Dayton, Eleanor C. Hughes and Edward B. Hughes; and one grandchild, Louisa Hughes Austin, the daughter and only child of a daughter Louisa, who had died prior to the death of said Enos.

At the date of the execution of the will, July 10, 1841, none of the children had married. On the 18th of February, 1870, the grandchild, Louisa Hughes Austin, being then a minor under the age of twenty-one years, and having her domicil in New Haven, died intestate, never having had any husband or children or brother or sister. There survived her, her father, Willis R. Austin, her aunts, the said Mary H. Wells, Cornelia H. Dayton and Eleanor C. Hughes, her uncle, the said Edward B. Hughes, her great aunt, Grace M. Wight, and her grandmother, Louisa W. B. Hughes, the widow of the said Enos B. M. Hughes. The widow died on the 6th day of October, 1872. At the time of her death all of the other survivors of Louisa H. Austin named above were living.

Willis R. Austin was appointed administrator of the estate of Louisa H. Austin soon after her death. As such administrator, and as heir-at-law of his daughter, he claims an

interest in the property of Mr. Hughes as the estate of his daughter. The property was largely composed of real estate, but after the payment of all debts and claims there remained between forty and fifty thousand dollars of personal property, which was held by Mrs. Hughes for life, subject to the provisions of the will.

If upon the foregoing facts the plaintiff, Willis R. Austin, as heir-at-law of Louisa H. Austin, or as administrator upon her estate, should be held entitled to any portion of the estate, it was agreed that a decree should be entered in the probate court for the district of New Haven, directing distribution to him of such portion of the estate as this court should find him entitled to; but that if it should be held that he was not entitled to any portion of the estate, then a decree should be entered in the probate court directing that no portion of the estate should be distributed to him.

On these facts the case was reserved by the Superior Court for the advice of this court.

*G. Pratt*, for the plaintiff.

We contend that Louisa H. Austin took a vested interest under the will, subject to be divested in the event of none of the children of the testator, or their lawful issue, being alive at the death of the testator's wife.

1. The language of the bequest is such as, upon a well established rule, to create a vested estate. The rule as laid down by Roper (on Legacies, Vol. I., 394,) is, that where an estate is bequeathed " in fractional interests in succession at periods which must arrive, (as to or in trust for *A* for life, and after his death to *B*,) the interests of the first and subsequent takers will vest together, and notwithstanding *B* may die before *A*, his personal representatives will be entitled to receive the legacy upon the death of *A*." The following cases are cited by Mr. Roper in support of this proposition. *Monkhouse* v. *Holme*, 1 Brown C. C., 298; *Attorney General* v. *Crispin*, id., 386; *Benyon* v. *Maddison*, 2 id., 75; *Scurfield* v. *Howes*, 3 id., 91; *Taylor* v. *Langford*, 3 Ves., 119; *Wadley* v. *North*, id., 364; *Blamire* v. *Geldart*, 16 id., 314.

To the same effect are the later text writers. 1 Jarman on Wills, 758; 2 Redfield on Wills, 215. The cases cited by these authors are very numerous. The leading case from our own reports is *Throop* v. *Williams*, 5 Conn., 98, which established the doctrine in this state, and has never been overruled. The provision with regard to the decease of his wife does not create a condition precedent, but is simply a direction as to the time when possession is to be taken. 2 Redfield on Wills, 235; 1 Jarman on Wills, 725.

2. The fact that there is a limitation over, by way of executory devise, does not prevent the vesting of the estate. It merely renders it subject to be divested upon the happening of the contingency. Therefore, in the case at bar, the estate being vested by the terms of the devise, and being entailed, as far as possible, consistently with the statute against perpetuities, the gifts over, in certain contingencies, have no effect to prevent the vesting of the estate in Louisa H. Austin; but simply point out certain contingencies by which she or her heirs would have been divested, had either of them happened. The English authorities are numerous and uniform on this point. *Shepherd* v. *Ingram*, Ambler, 448; *Galland* v. *Leonard*, 1 Swanst., 161; *Harrison* v. *Foreman*, 5 Ves., 209; *Smith* v. *Willock*, 9 id., 233; *Davidson* v. *Dallas*, 14 id., 576; *Wall* v. *Tomlinson*, 16 id., 413; *Brown* v. *Lord Kenyon*, 3 Madd., 410; *Sturgess* v. *Pearson*, 4 id., 411; *Leeming* v. *Sheratt*, 2 Hare, 14; *Cooper* v. *Cooper*, 25 Jurist, 178; *Mariott* v. *Abel*, Law Reps., 7 Eq. Cas., 478. The American cases are of the same purport, but it will be sufficient to refer to that of *Dale* v. *White*, in our own court, 33 Conn., 294.

3. The fact that the estate is to be distributed to the children who " may be living" at the decease of his wife, does not prevent the vesting of the estate. It vests in all the children, subject to be divested in favor of the survivors at the period of distribution. *Brown* v. *Lord Kenyon*, 3 Madd., 410; *Sturgess* v. *Pearson*, 4 id., 311; *Belk* v. *Slack*, 1 Keen, 238; *In re Sanders's Trusts*, Law Reps., 1 Eq. Cas., 683; *Nodine* v. *Greenfield*, 7 Paige, 544; *Williamson* v. *Field*, 2 Sandf. Ch.,

533. Even if the words making distribution to the children who may be living at the death of the testator's wife import contingency, so far as the children are concerned, so that the bequest would not vest until the time of distribution, this does not affect the gift to Louisa H. Austin, who was one of an independent class—"the issue of those who may have deceased." No words of survivorship attach to the vesting of the bequest to this class. The rule in such cases is thus stated: "A gift to children of *A*, living at a given period, *and* the issue of such as shall be then dead. Here the gift to the issue is independent, and the issue of a child dying in the testator's lifetime, or dead at the date of the will, is entitled." This rule has been in some doubt, but the recent cases have settled it as above. In *Martin* v. *Holgate*, Law Reps., 1 House of Lords Cas., 175, the question was fully and elaborately discussed, the conflicting decisions criticised, and the rule established. The following cases, constituting a preponderance of authority in favor of the rule, preceded that of *Martin* v. *Holgate*. *Lyon* v. *Coward*, 15 Sim., 287; *Barker* v. *Barker*, 5 De G. & Sm., 753; *Re Wildman's Trusts*, 1 Johns. & Hem., 299; *Penny* v. *Clark*, 1 De G., F. & J., 425. And the following American cases; *Wheeler* v. *Allen*, 54 Maine, 233; *Lawrence* v. *Hebbard*, 1 Bradf., 256; *Long* v. *Labor*, 8 Penn. S. R., 229. Since the case of *Martin* v. *Holgate*, the following decision has been rendered in accordance with it: *In re Orton's Trust*, Law Reps., 3 Eq. Cas., 375. The point considered settled by this decision is, "that if a legacy is given to *A*, and in case of his death to his children, and both *A* and his children die before the period of distribution, the representatives of the children take." 1 Am. Law Rev., 735.

4. There is nothing in the context of the will requiring the insertion of the words, "then living," into the clause of gift to the issue. The fact that a provision was made that two-thirds should "vest" on the re-marriage of his wife, does not make this a contingent bequest. *Taylor* v. *Forbisher*, 5 DeG. & Sm., 191; *Berkeley* v. *Swinburne*, 16 Sim., 275; *Edmondson's estate*, Law Reps., 5 Eq. Cas., 389; *Thompson* v. *Thompson*, 28 Barb., 436.

5. Nor does the gift over in certain contingencies affect the vesting. This point has been fully discussed in the cases cited above. In the language of the Master of the Rolls, (5 Ves., 209),where a vested interest has been created, " the court will never permit the absolute gift to be defeated, unless it be perfectly clear that the *very case* has happened in which it is declared that the interest shall not arise." The doctrine laid down in the text books is the same. It is clear that the " very case" upon which the interest was to be divested has not arisen.

6. The vesting of estates is favored by the courts. 2 Redfield on Wills, 245; Hawkins on Wills, 237. To quote the language of Best, C. J.: " It has long been an established rule for the guidance of the court, that all estates are to be holden to be vested, except estates in the devise of which a condition, precedent to the vesting, is so clearly expressed that the courts cannot treat them as vested without deciding in direct opposition to the terms of the will." *Duffield* v. *Duffield,* 1 Dow & Clark, 311.

*J. S. Beach* and *L. H. Bristol,* for the defendant.

The question with regard to the real estate left by the testator having been disposed of by a former decision of this court, (38 Conn., 405,) the only question for our present consideration is, whether, under the will, the grandchild Louisa took such an interest in Mr. Hughes's personal property, that it vested in her during her life, and upon her decease passed to her personal representative.

*First.* This question is answered in the negative by the plain language of the testator's will, disposing of his estate upon the decease of his wife as follows: " Upon the decease of my said wife I give all my said estate *to such of my children as may be living at the time of her decease, and to the issue of those who may have deceased.*" By these words, *considered by themselves alone,* without extrinsic aid from the other provisions of the will to be hereafter considered, it is clear that the testator intended to designate as the objects of his bounty those children and their representatives, *and those*

*only,* who should be *in existence at the date of his wife's decease.*

1. Admitting the preference which the law has for vested over contingent interests, and admitting also that upon an ordinary limitation, by way of remainder, to children in a class, all those who are *in esse* at the decease of the testator take vested and consequently transmissible interests, it is also elementary law that where it appears from express declaration or clear inference that the testator intended to confine his bequest to those only who answer the description at the happening of a certain contingency, such intention must be carried into effect. 1 Jarman on Wills, 816, 817 ; 2 Redfield on Wills, 623. In the first place, it is clear that the bequest, upon the decease of Mrs. Hughes, " to such of my children as may be living at the time of her decease," gave *them* only a contingent, and not a vested interest in the estate. *Wordsworth* v. *Wood,* 2 Beaven, 25 ; *Olney* v. *Hull,* 21 Pick., 311 ; *Thomson* v. *Luddington,* 104 Mass., 193 ; *Hurlburt* v. *Emerson,* 16 id., 241 ; *Winslow* v. *Goodwin,* 7 Met., 363 ; *Denny* v. *Allen,* 1 Pick., 147 ; *Baldwin* v. *Karver,* Cowp., 309. The foregoing authorities making it plain that the bequest to the children is contingent upon their survivorship of their mother, it would seem to be a matter of " clear inference," that the bequest to the issue, (in this case the grandchild,) is also contingent upon the same survivorship.

2. It may be claimed that the bequest to the issue of a deceased child is not contingent, but vested, because it is given to that issue without being *in terms* restricted to such issue as shall be living at Mrs. Hughes's death. To this claim there are several sufficient answers. In the first place the contingency, that is, the death of Mrs. Hughes, attaches *to the substance of the gift,* and not merely to the time of payment. By the words " *upon* the death of my wife I give," the benefit in point of right is limited by the testator to those who are then in existence to answer to the description of those who are to take. If no issue of a deceased child is then in being, there is no one to fall within the category created by the words. The case comes within the rule that

when the words " payable," or " to be paid," are omitted, and a legacy is given " *at* twenty-one," or, as in this case, *at* the death of the widow, this confers only a contingent interest. *Cruse* v. *Barley*, 3 P. Wms., 20; *Smell* v. *Dee*, 2 Salk., 415; *Bruse* v. *Charlton*, 13 Simons, 65, 68; *Phelps* v. *Phelps*, 28 Barb., 121. In the next place, the construction contended for involves the absurdity of supposing that the testator had in his mind a preference for his remoter descendants (unknown and unborn) over his own immediate children, and that he intended by the language used to give his children only an inchoate, contingent, untransmissible interest, but did intend to give his grandchildren, in case of a parent's death, an interest that would be absolute, vested and transmissible, so that the share which, during the life-time of the mother, was only contingent, should, on the instant of her decease, become absolute and perfect in the daughter. This construction, in a not improbable contingency, might result in a grandchild's taking the whole estate, while in the same contingency an own daughter of the testator would be entitled to but one-half of it. Again, the testator's object in the use of the language under consideration cannot be questioned. No one can doubt that his manifest intention was to provide for those of his children who should survive his wife, with a further provision that the issue of a deceased child should be *substituted* in place of the deceased parent, so as to take that parent's share and no more. This view is sustained by the weight of English authority in similar cases. *McGregor* v. *McGregor*, 2 Coll. C. C., 192; *Bennett* v. *Merriam*, 6 Beavan, 360; *In re Corrie's will*, 32 id., 426; *Holgate* v. *Jennings*, 34 id., 79. It may be conceded that some of the English cases come to a different conclusion, but an examination of those authorities will show that they turned upon the construction of a particular clause, upon which no light was shed by the other provisions of the will, and that the *conceded intent* of the testator *is sacrificed* to the strict and literal import of the *words* used. It is respectfully submitted that in a conflict of authority an American court will follow those decisions which, discarding technical construction, make the testator's intention the car-

dinal principle of interpretation. See remarks of the court in *White* v. *Howard*, 38 Conn., 355.

*Second.* It is submitted that we have .showed that the language of the bequest upon the decease of the wife, considered by itself, is sufficient to demonstrate a positive intent that the contingency of survivorship was to apply as well to the remote descendants, the issue, as to the immediate offspring, the children. An examination of the other and subsequent provisions of the will, puts it beyond the possibility of doubt that the testator intended that the issue of a deceased child should take a share in his estate, *only* in case such issue should be alive at the date of his wife's decease.

1. No citation of authorities is needed to show that, in this country, the construction of a will is to be made upon the *entire* instrument, and consequently all its parts are to be considered with reference to each other. As remarked by the court in *Hoxie* v. *Hoxie*, 7 Paige, 192, "the testator's intention is to be ascertained from everything contained within the four corners of the instrument." "The legal import of technical language is not to prevail against the manifest intention of the testator, appearing from other parts of the will." *Homer* v. *Shelton*, 2 Met., 194. "Whatever may be the strict grammatical construction of the words, that is not to govern if the intent of the testator unavoidably requires a different construction." *Smith* v. *Bell*, 6 Peters, 68, 84.

2. The intent of the testator in this case, as gathered from the subsequent provisions of the will, restricts the gift to such issue as should survive the wife. In the first place the language of the gift in question is followed by directions having in view certain contingencies which might happen during the continuance of the wife's life, and which form no essential part of the disposition of the corpus of the estate. Then follows the clause, "If none of my children, *or their lawful issue*, shall be living at the time of the decease of my said wife, I give, devise and bequeath all my said estate to William L. Wight, and Grace, his wife." No refinement of ingenuity can reconcile this language with an intent to vest an interest in the issue irrespective of their survivorship of

the wife.   Place in juxtaposition the two clauses and the meaning is unmistakable.   " Upon  the decease of my wife I give my estate  to such  of my children  as shall  be living at the time of her  decease, and to  the  issue  of any deceased child, but if  no child and no issue of any child shall be living at her  decease, then over."   Language  could not, it would seem, more  clearly express  the idea  that  neither  child, *nor the issue of any child,* was to take unless they survived the wife.   In the next place, the provision in the will that, upon the contracting of  a second marriage by the wife, " two-thirds of  the estate shall thereupon immediately vest in my children then living, and in the issue of  those who may have deceased, is of itself a  conclusive indication that the testator  did not intend that any interest should vest in the issue  before the marriage  or death of the widow.    Suppose Mrs. Hughes had married again in 1869 ;  if the interest of the grandchild was already vested, as contended by the plaintiff, why provide that it should vest *then* ?   There cannot be two periods of vesting. The established rule  in such  cases is, that a provision that devisees shall take a vested interest upon the happening  of a certain event, raises  a  sufficient implication  against  their taking a *present* vested interest.   *Glanville* v. *Glanville*, 2 Mer., 38 ;  *Comport* v. *Austen,* 12 Simons, 218, 246 ;  *Wakefield* v. *Dyatt,* 4  Jur. N. S., 1098.   Further, the gift of the whole estate to the wife for her life " to be used in the support of herself and my children," taken in connection with the power given to the wife " to sell and dispose of any part of my said  estate, absolutely and in  fee  simple," is fatally repugnant to the idea that any interest under the will was to become vested until the death of the wife.   And finally, the supposed intent to vest an absolute, indefeasible, transmissible interest in the grandchild, is at variance with the whole scheme of the will, and the painstaking care therein shown to restrict the enjoyment of the testator's estate to those only of his own blood so long as any such were in existence.   It will be seen that the estate is first limited to his own children and their issue, then, if any of them die without issue, to the  survivors, then, in case of the death of the

last survivor without issue, to his only sister, Mrs. Wight, and her husband, and the survivor of them, and, upon the death of the survivor, to their issue. That a testator should take such special precautions to give his own blood the benefit of his estate so long as that blood continued to exist, is clearly inconsistent with an intention to vest in a grandchild an absolute estate which might, and in the event that has happened would, upon her decease, pass out of his family to a mere stranger having no claim upon his bounty.

*Third.* To give effect to the manifest intention of the testator, the court will if necessary transpose the words of the bequest, so as to read " to such of my children, and to the issue of those who may have deceased, as may be living at the time of her decease. *Covenhoven* v. *Shuler*, 2 Paige, 122 ; *Pond* v. *Bergh*, 10 id., 140 ; *East* v. *Cook*, 2 Vesey Sen., 32 ; *Blamire* v. *Geldart*, 16 id., 316 ; *Mosley* v. *Massey*, 8 East, 149 ; *Doe* v. *Allcock*, 1 B. & Ald., 137 ; *Kellogg* v. *Mix*, 37 Conn., 243.

SEYMOUR, J. The question in this case arises upon the construction of the following clause in Mr. Hughes's will :

" Upon the decease of my said wife I give all my said estate to such of my children as may be living at the time of her decease, and to the issue of those who may have deceased, and to their heirs and assigns forever ; to be equally divided between them ; the issue of such deceased children to take per stirpes and not per capita."

The will is dated in 1841, at which time all Mr. Hughes's children, five in number, were living. He died in 1864, leaving a widow, to whom all his property was given for her life, and leaving four of his children (who ultimately survived the widow), and leaving one grandchild, Louisa Hughes Austin, the daughter and only child of his daughter Louisa, who had died prior to his death. This grandchild died February 18th, 1870, a minor and intestate, having her domicil in New Haven. The widow died in 1872.

The administrator of the grandchild, as plaintiff in this amicable suit, claims under the will one-fifth part of the per-

sonal estate of Mr. Hughes. The claim is that upon the death of Mr. Hughes the grandchild took a vested interest in one-fifth part of his estate, subject indeed to be divested in a certain event provided for in another part of the will, to be more particularly noticed hereafter; which interest might also be increased in the event of the death without issue of one or more of her uncles or aunts.

The defendant on the other hand insists that the gift to the testator's children is clearly contingent upon their surviving their mother, the gift being only to such of them as may be living at her death; and that a similar contingency by reasonable construction applies to the grandchild, to wit, that in order to take under the will she must be living at the death of her grandmother; and that the clause above recited in the will should be construed as it would be had the words "if then living" been inserted after the word "issue."

It is conceded to be probable that had the testator's attention been called to the subject he would have made the gift to the grandchild dependent upon the same contingency of being alive at the termination of the life estate on which the gift to his children is made to depend, and this probability has been deemed so strong that in the earlier cases the issue under wills like this were adjudged not to take unless living at the death of the tenant for life. But clauses like that under consideration frequently occur in wills and have become the subjects of much discussion. The earlier cases have been in the English courts carefully reviewed, and it is now firmly settled in England that under the language used in this will the grandchild takes a vested estate.

It is true that in regard to the construction of wills former cases, unless *ad idem*, are of small account; but in respect to clauses of frequent occurrence in wills it is important that there should be uniformity of construction, and we do not feel at liberty to adopt a rule as applicable to this case different from that which has received the sanction of the highest courts in Great Britain, unless we can see strong reasons for such departure.

It is clear upon well-settled rules of construction that the

words of this will in their natural import create a vested interest in the grandchild immediately on her grandfather's death. At his death she was the issue and sole issue of one of his children who had deceased. As such, she was to take per stirpes, that is, to take the share which her mother would have taken had she lived till the death of the tenant for life, namely, one-fifth of the estate. No contingency is *expressed* in the will regarding this gift. The object of the testator's bounty is alive at the testator's death and capable of immediately taking. There is no uncertainty as to the person, or as to the gift. The time of taking possession is indeed postponed till the grandmother's death, but the words of the gift are in the present tense, "I give." The words connected with these words of gift, to wit, "upon the decease of my said wife," are uniformly construed both in England and in this country to relate to the time of taking effect in possession and not to the time of taking effect in interest. *Harvey* v. *McLauglin,* 1 Price Exch. R., 254; *Throop* v. *Williams,* 5 Conn. R., 98; *Fay* v. *Rogers,* 2 Gray R., 175; *Harrison* v. *Foreman,* 5 Vesey, 209.

The whole question then resolves itself into this, whether the fact that the testator's children take only a contingent estate depending on their outliving their mother, clearly indicates that the gift to the issue of such of his children as might die during the mother's life, is by implication also contingent upon the like event of their being alive at the death of the tenant for life.

Conflicting views and decisions have taken place in England on this subject and refined distinctions have been attempted. They are readily found in our text books, and there is no occasion to examine the controversy in detail. The late case of *Martin* v. *Holgate,* in the House of Lords, seems to have settled the question in England. Law Reps. 1 House of Lords Cas., 175. The bequest in that case, in every essential feature which affects the matter before us, is identical with the bequests in Mr. Hughes's will. The testator bequeathed his residuary estate to his wife for life, and then to such of his nephews and nieces as should be living at

her death, and then adds, " but if any or either of them should then be dead, leaving issue, such issue shall be entitled to their father's share, but in equal proportions." A nephew died during the life of the widow, leaving a daughter who died an infant during the widow's life. The same question there arose which arises here, namely, whether this infant daughter took a vested interest in the residuary estate, and it was held that she did. Several eminent judges gave opinions at length, all concurring in the judgment. The grounds of the decision are very clearly stated by Ex-Chancellor Lord Westbury. He says : " According to the plain effect and meaning of this bequest, unless that meaning be altered by the implication of additional words, the issue living at the death of a nephew or niece who may pre-decease the tenant for life, take an immediate vested interest in that share which would have been taken by the parent if he or she had been living at the time of distribution. The interest of the issue is vested and immediate, although the amount of the share is uncertain until the death of the tenant for life."

We give another extract from Lord Westbury's opinion. " The implication contended for by the respondent is not warranted by the form of the gift, which is not elliptical, nor referential, nor substitutional; nor is the implication necessary to avoid absurd or contradictory consequences. It is by no means irrational to suppose that the testator intended to make the interest of the orphan issue vested and immediate, although he made the interest of the parent contingent on surviving the tenant for life. A judge is not justified in departing from the plain meaning of words which admit of a rational construction, for the purpose of giving effect to an assumed intention which appears to him more rational or more consistent with the rest of the will."

In *Martin* v. *Holgate* the bequest to the issue of deceased nephews and nieces is indeed in a sentence distinct from that in which the gift is made to the nephews and nieces themselves; so far differing from the case under our consideration, where the contingent gift to the testator's children and

the gift to the issue of deceased children are in different clauses of the same sentence. So too there is a slight difference of phraseology in the two wills, the contingency "if any or either of them should then be dead leaving issue," being expressed in the will before the House of Lords and not expressed in Mr. Hughes's will.

In the case *In re Orton's trust*, reported in Law Reps. 3 Eq. Cas., 374, the form of the gift is more closely like that in the case before us. The entire gift to children and the issue of deceased children is in one and the same sentence and the phraseology of the two wills nearly identical. In *Orton's trust* the money to be raised by the sale of property on the death of the testator's two sons was thus bequeathed : "equally among such of my five daughters as shall be living at the death of the survivor of my sons, and to the children, grandchildren and issue of such of my said daughters as shall then happen to be dead, &c."

The case was regarded by the court as clearly falling within the rule established by *Martin* v. *Holgate*, and the doctrine of that case was carried to an extent which we have no occasion here to follow.

These two English cases seem to settle the law in England so fully that we forbear the citation of the numerous conflicting cases which preceded them. Several American cases were cited by counsel, but none of them seem to touch the precise point on which this turns.

The counsel for the respondent rely upon another part of the will as having an important bearing on the question under consideration. A clause occurs in Mr. Hughes's will in substance as follows : "If none of my children or their lawful issue shall be living at the time of the decease of my said wife, I then give all my estate to William L. Wight, &c. The effect of this clause is such that, upon the contingency therein expressed happening, Louisa Hughes Austin and her representatives would lose their interest in the estate of Mr. Hughes. The interest vested in her, and on her death in her representatives, would be divested upon the happening of the contingency, and this we apprehend is the

whole and only effect of the clause. The clause is entirely consistent with an interest vested, but subject to be divested by the contingency provided for. It is a familiar rule that if there are clear words of gift giving a vested interest to parties, the court will not permit that absolute gift to be defeated unless it is perfectly clear that the very case has happened in which it is declared that the interest shall not arise. The rule is thus stated in *Harrison* v. *Foreman*, 5 Vesey, 209. The Master of the Rolls there says: "There is a vested interest, and the contingency upon which it is to be divested has never happened. The vested interest therefore remains as if that contingency had never been annexed to it."

In conclusion then, it appears that the weight of authority is in favor of the plaintiff's claim, and we also yield, though with some hesitation, to the force of the reasons by which that claim is supported. We therefore advise the Superior Court that the plaintiff, as administrator of Louisa Hughes Austin, is entitled to a share of the personal estate of the deceased Enos B. M. Hughes.

In this opinion the other judges concurred.