JOHN M. JOHNSON AND GARDINER GREENE, JR., TRUSTEES,
   vs. AARON D. WEBBER, EXECUTOR, AND OTHERS.

Second Judicial District, Norwich, October Term, 1894.  ANDREWS, C. J.,
   TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

A testatrix gave one half of the residue of her estate to her two daughters,
   B and S, and their heirs, subject to a provision that the executors
   should hold and invest $8,000 thereof and pay certain annuities out of
   the income, and gave the remainder of the income to such daughters
   equally ; but if either of the daughters should die before the last sur-
   vivor of the annuitants, her proportion of the income was to be paid
   in accordance with her last will, and if she left no will, then to such
   daughter's heirs at law.   *Held* that upon the death of the last annui-
   tant the $8,000 should be distributed, one half to the estate of each
   of the daughters.
The will provided that the other half of the residue should be held in
   trust during the lives of the testatrix's granddaughters, W and E, and
   that so much of the income thereof as was necessary should be used
   to pay certain annuities and the remaining income divided equally
   between said granddaughters ; that upon the decease of the surviving
   granddaughter the principal should be divided into two funds, one of
   which was to be retained by the executors, out of the income of which
   they were to pay the annuities; and that upon the decease of the last
   annuitant this fund was to be distributed *"per capita equally among"*
   the testatrix's "then lineal descendants."   By the terms of the will
   the second fund was, upon the decease of both granddaughters, to be
   divided and distributed equally to their children *per capita*.   Two
   such great-grandchildren were living at the time the will was executed.
   A later clause gave everything not finally and fully disposed of by the
   foregoing provisions, to the heirs at law of the testatrix.   It also
   declared the previous provisions of the will altered as follows: "If
   either or both of my said granddaughters die, leaving a husband sur-
   viving, such husband shall receive of the income of my estate during
   his life, one half as his said wife would receive, if living, under the
   provisions hereof; and the same of both husbands, the husbands half
   what the wife would receive."   At the time the will was executed
   each of said granddaughters had a husband living, and one of them
   survived both granddaughters and all the annuitants.   In a suit to
   determine the construction and validity of the will it was *held*:—
1. That in view of all the circumstances the provision above quoted consti-
   tuted a gift to each of the husbands living at the time of making the
   will, and therefore was not in violation of the statute against per-
   petuities.   General Statutes, § 2952.
2. That the insertion of this provision postponed the time of distribution
   of the two funds until after the death of the surviving husband.

3. That the separation into two funds should then be made as of the time of the death of the surviving granddaughter.
4. That the gift of the first fund to the "then lineal descendants" of the testatrix, was void, as contravening the statute against perpetuities.
5. That the amount of such fund vested in the heirs at law of the testatrix at her decease, and would go, at the death of the surviving husband, to those who represented them.
6. That the second fund went to the great-grandchildren as a class, taking effect in point of right at the death of the testatrix, and in point of enjoyment at the death of the surviving granddaughter, subject only to the charge of income given to the surviving husband.

(Argued October 17th, 1894—decided February 8th, 1895.)

SUIT to determine the validity and construction of the will of Abby W. Hubbard, late of Norwich, deceased; brought to the Superior Court in New London County and reserved by the court, *F. B. Hall, J.*, upon the facts stated in the complaint, for the advice of this court.

The case is sufficiently stated in the opinion.

*W. A. Briscoe*, for the plaintiffs.

*Jeremiah Halsey* and *Frank T. Brown*, for John D. Edmond, 2d, Mary H. and Louis Dugal.

*William B. Anderson* of New York, for Juliet B. Appleton and Helen H. White.

*John T. Wait*, for Andrew S. Webster and the Estate of Charles Spalding.

TORRANCE, J. This is a proceeding to obtain a judicial construction of the will of Abby W. Hubbard, reserved by the Superior Court, upon the facts found, for the advice of this court.

The will was made in May, 1863, and the testatrix died in July of that year. At the time the will was made, and at her death, her immediate family and descendants consisted solely of two daughters—Mrs. Mary H. Bull, a widow, and Mrs. Juliette H. Spalding, the wife of Charles Spalding; two granddaughters, children of Mrs. Bull, named Helen and

Juliette, the former the wife of Andrew S. Webster, and the latter the wife of Henry V. Edmond; and two great-grandchildren, one being the son of Mrs. Edmond, and the other the daughter of Mrs. Webster. After the death of the testatrix, Mrs. Bull married Aaron D. Webber, and died in January, 1894, leaving her husband who, as executor under her will, is a party to this proceeding. Mrs. Spalding, who never had any children, died in 1865, leaving her husband surviving her, and a will in which she gave to him all her estate; he died in 1885, and his executor and trustees are parties here claiming under Mrs. Spalding's will. One of the granddaughters, Mrs. Webster, died in January, 1864. She left surviving her, her husband, Mr. Webster, and a daughter, now Mrs. Louis H. Dugal. The husband and daughter, together with her husband and minor children, are made parties to this proceeding. The other granddaughter, Mrs. Edmond, died in 1878, leaving her husband, Mr. Edmond, and three children surviving her. Mr. Edmond has died since this suit was brought; the three children, together with their children, are made parties to the suit.

The will consists of fourteen articles, but as the questions in the case arise mainly, if not entirely, upon the eleventh and thirteenth articles, it will be unnecessary to consider the others except incidentally; and for such purpose it will be sufficient to state the substance of most of them other than the eleventh and thirteenth. The first merely directs that the debts and funeral charges be paid. The second gives absolutely to the daughters, Mrs. Bull and Mrs. Spalding, certain property therein mentioned. The third and fourth give certain small legacies to the corporations named therein. The fifth, sixth, seventh, eighth and ninth, provide that certain sums shall be paid yearly to certain relatives therein named, during their lives. These annuities, as we shall for convenience hereafter call them, amount in the whole to five hundred dollars. The annuitants named were her brother, Joseph Williams; his two daughters, Abby and Rebecca; Mrs. Huntington, a sister of the testatrix; Mrs. Nancy Whit-

ing and her daughter Mary; and Mrs. Betsey Williams. The tenth article reads as follows :—

"And all the annual sums of one hundred dollars each given as aforesaid, shall be paid to the several legatees aforesaid in the semi-annual sums of fifty dollars each to the persons entitled to receive them, by the executors hereof from the income to be received from the portion of my estate to be left in the hands of said executors as herein provided, and said annual sums shall commence running from the time of my decease, one half said annual sums shall be paid from the income to be received by said executors and their successors from the portion of my estate to be left as hereinafter provided in the hands of the executors for the benefit of my granddaughters, Mrs. Helen Webster and Mrs. Juliette Edmonds, during their lives, and the other half from the income to be received by said executors from the portion of my estate to the value of eight thousand dollars to remain in their hands for that purpose, as hereinafter provided." The twelfth and fourteenth articles are of no importance here. The eleventh and thirteenth articles read as follows :

"*Eleventh*—After paying the expense of settling my estate, and within one year after my decease and earlier if convenient, the estate then in the hands of the executors, both real and personal, including my homestead, shall be appraised except what is hereinbefore specifically given, by one or more disinterested persons to be agreed upon by my said daughters, or if they cannot agree, to be appointed by the Court of Probate, from the District of Norwich, at its fair cash value, which appraisal shall be entered of record in said court, and after paying the legacies herein given—one half the residue of said appraised estate which half shall be entirely of the personal estate at said appraised value, shall be and remain in the hands of the executors and their successors during the lives of my granddaughters, Mrs. Helen Webster and Mrs. Juliette Edmond, and the life of the survivor of them, and from the current income thereof said executors, after paying current expenses and charges, shall first pay to the persons entitled to receive it, one half of the

aforesaid annual sums of one hundred dollars each, and the balance of the income equally to my said granddaughters, and if either of my said granddaughters shall decease, whether before or after me, the other surviving, the portion of said income which said deceased one would have received if living, shall be paid to the lineal descendant or descendants of such deceased one if she shall leave any, and if not then to said surviving granddaughter during her life.

"And upon the decease of both of said granddaughters the executors and their successors shall retain in their hands a portion of the best part of said estate, so held in their hands for my granddaughters, as in their judgment will be amply sufficient to yield an income of double the amount then required to pay the one half of said annual sums of $100 each, and after paying said half the executors shall pay the balance of said income to the lineal descendants of my said granddaughters *per capita* if any such descendant shall then live, if not, to my heirs at law and the residue of the estate so held for the benefit of my granddaughters shall be divided and distributed equally to their children *per capita*, provided that if any such great-grandchild of mine shall have deceased previous to the time of such distribution, leaving a child or children, such child or children shall receive such portion as the parent would receive if living, but if there be then living no child or children or lineal descendant of my said granddaughters, then the residue of said estate shall be distributed among my heirs at law.

"And as to the other half of the residue of said appraised estate, including my homestead, I give, bequeath and devise the same, subject however to the provisions hereinafter made concerning the aforesaid annual sums of $100 each, to my beloved daughters, the said Mrs. Bull and Mrs. Spalding, and to their heirs, that is to say, said executors and their successors shall hold properly invested of the personal estate (if sufficient therefor, and if not as a charge upon the real estate) an amount thereof according to said appraisal, equal to eight thousand dollars out of the net income, of which they shall pay the one half of said annual sums of $100 dol-

lars each, and the balance of said net income to my said daughters equally, and said executors shall hold the same with their successors until the decease of the last survivor of the persons aforesaid entitled to $100 per annum each, provided that if my said daughters or either of them shall die before said last survivor, her proportion of said income shall be paid according to her last will and testament, or if she leave none, to her heirs at law.

"And the portion of my estate to be held by my executors, called above the "*best part*," for the benefit of the persons entitled by this will to $100 per annum, shall, upon the decease of the last survivor of said persons, be distributed *per capita* equally among my then lineal descendants forever.

"*Thirteenth*—Should any questions arise as to the proper construction of this will, or any doubt exist as to the persons or corporations intended as legatees under its provisions, the executors and the survivor of them will fully understand my intent, and are endowed with full power and authority to determine such questions and doubts, and their determination shall be absolute and final.

"And should there, upon the ending of all the trusts herein, remain anything not by the preceding provisions finally and fully disposed of, I give, bequeath and devise the same to my heirs at law. (The provisions of the eleventh section are altered thus : If either or both of my said granddaughters, Mrs. Webster or Mrs. Edmonds, die, leaving a husband surviving, such husband shall receive of the income of my estate during his life, one half as his said wife would receive, if living, under the provisions hereof, and the same of both husbands, the husbands half what the wife would receive.)"

It is clear even from a cursory reading of the eleventh article of the will, that the testatrix intended, after the payment of the debts, charges, and specific legacies other than the annuities, to divide the residue of her estate into two equal parts, and to give one of those parts to her daughters in equal shares, and that this intent is so expressed that it can be carried out. Whatever else in the will may be doubtful, this much is certain, that the eleventh article clearly and

legally disposes of this half of the estate. It was given, however, subject to the right of the executors to retain in their hands, for the payment of one half of the annuities, the sum of eight thousand dollars. This sum was so retained, and the balance distributed to the daughters soon after the death of the testatrix. This fund of eight thousand dollars is now in the hands of the plaintiffs, with its accumulations since the death of the last annuitant, and one of the questions in the case and the only one relating to this part of the estate, is " what is the duty of the present trustees regarding the disposition of the $8,000 fund ? "

Under the will the balance of the income of this fund, not required to pay annuities, is to be paid to the daughters equally, or if they die before the last annuitant, then according to their last wills, or, in default of a will, to their heirs at law. It appears from the finding that the last annuitant died in December, 1893 ; and that up to that time the income of said fund had been paid in accordance with the provisions of Mrs. Hubbard's will. The only question then respecting this fund is, to whom does it with its accumulations, if any, since the death of the last annuitant, now belong? We answer, to the estates of the daughters in equal proportions. During their lives the fund was theirs subject only to the payment of one half of the annuities, and that charge upon it ceased in December, 1893. The fund, with its accumulations, if any, should now be paid, one half to the executor of Mrs. Webber, and one half to the executor of Charles Spalding.

The remaining questions relate to the disposition of the other half of the estate; and with regard to this disposition the intent of the testatrix is by no means clear and certain. Before considering those questions however, it may be well to state what has been done with the principal and income of this half since the death of the testatrix.

Of the annuitants named in the will, Joseph Williams, Mrs. Huntington, Mary Williams and Betsey Williams, died before the death of Mrs. Edmond, which occurred in 1878; Mrs. Nancy Whiting died in March, 1880; Abby

Williams died in January, 1888, and Rebecca Williams, the last of the annuitants, died in December, 1893. All the annuities were paid as directed in the will. Until the death of Mrs. Webster in January, 1864, the balance of the income after paying annuities, was paid, one half to Mrs. Webster, and one half to Mrs. Edmond. Upon the death of Mrs. Webster and until the death of Mrs. Edmond, the income of said half of the residue, after paying one half the annuities, was paid as follows: One half to Mrs. Edmond; one quarter to Mr. Webster; and the remainder to the child of Mrs. Webster, now Mrs. Dugal. Upon the death of Mrs. Edmond, the executors made no division of said trust estate, but held, and the plaintiffs still hold, the principal thereof, and until the death of the last annuitant paid the income as follows: They first paid the annuities. Of the residue of the income they paid one quarter to Mr. Edmond; one quarter to Mr. Webster; one eighth to the child of Mrs. Webster, now Mrs. Dugal; and one eighth each to the three children of Mrs. Edmond, who are parties to this suit. The income from said trust fund, accruing since the death of the last annuitant, the plaintiffs have not paid over. It was stated on the argument before us, that, whether these past payments of income, made up to December, 1893, to parties other than annuitants, were valid or not, all the parties in interest now had agreed to treat them as if valid, and in considering this part of the case we will assume the existence of such an agreement.

This renders it unnecessary to consider some of the questions stated in the complaint. The main questions of any practical importance now in the case are, whether this half of the residuum of Mrs. Hubbard's estate, with its accumulations since the death of the last annuitant, belongs to those who legally represent the two daughters, Mrs. Webber and Mrs. Spalding, or whether it belongs to the great-grandchildren of the testatrix, under the will. The former is the claim of the executor of Mrs. Webber and the executor and trustees of Mr. Spalding, while the latter is the claim of the great-grandchildren.

One of the subordinate questions in the case relates to the rights of the husbands of the granddaughters in this fund during life; and as the decision of this question affects the discussion of the others, it will be well to dispose of it first.

It is said by the great-grandchildren that the provision for the husbands of the granddaughters in the thirteenth article of the will, is void under our statute, because the words used to describe the beneficiaries include, or may include, husbands to be born of persons unborn at the death of the testatrix. It is true such a construction may be put upon those words, but the supposition that the testatrix, under the circumstances, intended to use them in this sense is a very violent one, and ought not to be adopted if a more reasonable one may fairly be given to them. When she wrote the will the husbands had been married to her granddaughters for some years, and were doubtless well known to her and regarded by her with affection. In the eleventh article of her will she had made provision for her granddaughters, and would most naturally have immediately followed that by a provision for their husbands; but either through mistake or inadvertence apparently, she failed to do this, and before the will is completed she is made aware of this failure, and at once proceeds to make provision for them by an addition to the thirteenth article, which is expressly declared to be an alteration of the provisions. of the eleventh article. This provision is drawn with a good degree of brevity, and the words used are mostly words of a very general nature; but when the testatrix speaks of "Mrs. Webster" and "Mrs. Edmond" dying leaving "a husband," the words "a husband" may be fairly said to mean the then husband of each granddaughter. In short we think if this provision for the husbands is read, as it should be, in the light of the circumstances under which it was made, the beneficiaries intended were the then husbands of the granddaughters. Upon this point the present case is quite similar to that of *Beers* v. *Narramore*, 61 Conn., 13. There, as here, the language descriptive of the beneficiary was quite general and indefinite, but the court held that it meant a certain and definite person

answering the description when the will was made. The reasoning in that case upon this point is equally applicable here, and we adopt it without repeating it. The provision for the husbands then is a valid one, and they are each entitled during life to the income of one fourth of this half of the estate of the testatrix. The gift to them is made a charge upon the entire fund as was the gift to the grand-daughters.

This construction makes it necessary to consider the effect, if any, of this provision in favor of the husbands, upon the eleventh article of the will directing a division of this half of the estate into two unequal parts, and a distribution of one of those parts, at the death of both granddaughters, to the children of both, and of the other part, at the death of the last annuitant, to the then lineal descendants of the testatrix.

And first as to its effect, if any, upon the provision for a separation or division of this half of the estate into two unequal parts at the death of both granddaughters. The eleventh article expressly provides for such a division at that time, and disposes of one part in one way, and of the other in an entirely different way. We do not think this direction to divide this half of the estate into two unequal parts is at all affected by the added provision in favor of the husbands, and it should be carried out if .it can now be done. A rule is given by which the division can be made, with reasonable certainty, as of the time of the death of Mrs. Edmond in 1878, and we see no difficulty, legal or otherwise, in now making such a division as of that date, and in regarding it as if it had been made as of that date. It is true, one of the chief reasons for making such a division at the time specified, namely, to provide for the payment of one half of the annuities, has now ceased to be operative, all the annuitants being dead; still the manifest intent of the testatrix to make a different disposition of each part remains and should be carried out if legal. On . the whole we think this half of Mrs. Hubbard's estate should be regarded and treated, so far forth as may be necessary to carry out her

intent to dispose of the parts in different ways, as if the division which she directed to be made on the death of both granddaughters had been made at that time, under the rule given in the will.

The next question is what effect, if any, this added provision for the husbands, had upon the distribution of each of these parts directed to be made in the eleventh article of the will. That article expressly directs one part to be divided and distributed, on the death of both granddaughters, to the children of both; and the other, on the death of the last annuitant, to be distributed to the then lineal descendants of the testatrix. This provision for the actual distribution of each part at the time specified, is manifestly inconsistent with the later provision made for the husbands; for one or both of them might be alive at the death of the surviving granddaughter, and also at the death of the last annuitant; and the fund, upon the whole of which the provision in their favor was a charge, could not be actually distributed unless both husbands were dead at the times specified for distribution. As a matter of fact both husbands outlived the granddaughters, and all of the annuitants; one of them, Mr. Edmond, died since this suit was commenced, and the other, Mr. Webster, is yet alive. The provision for the husbands was made later than the provision for actual distribution; it was made apparently with deliberation, and with full knowledge that it would change or modify the earlier provision as to the time of actual distribution; and in legal effect we think it provides that no actual distribution of one part shall be made at the death of both granddaughters, unless both husbands are then dead; nor of the other, at the death of the last annuitant, unless both husbands are dead at that time. On this construction both of the parts, into which we have regarded the principal of this half of Mrs. Hubbard's estate as divided, must be held intact till the death of Mr. Webster.

This brings us to the important practical question in the case, namely, to whom does the principal of each of these parts of the fund go on the death of Mr. Webster. The part

which the executors were directed to retain in their hands on the death of Mrs. Edmond, to provide for the payment of one half the annuities, we will, for brevity, hereafter call the first part, and the other the second part respectively. By the terms of the eleventh article of the will, as we have construed it in the light of the subsequent provision made for the husbands, this first part is to go on the death of Mr. Webster to the "then" lineal descendants of the testatrix. This is in effect a gift to her "then" lineal descendants, and is we think void under § 2952 of the General Statutes of this State. This would make the first part intestate estate, but for the provision made in the thirteenth article of the will which reads as follows : "And should there, upon the ending of all the trusts herein, remain anything not by the preceding provisions finally and fully disposed of, I give, bequeath and devise the same to my heirs at law." These are words of present gift to a class of persons who came into being immediately upon the decease of the testatrix. In the eleventh article she desires to make a residuary provision in favor of those of her descendants who might survive at a remote period, and describes them as " my then lineal descendants." Had she desired, in the thirteenth article, her property otherwise undisposed of, to go to such persons as might be her heirs at law at the final termination of the trusts, she would naturally have used in describing them language somewhat similar in character to that used in the eleventh article. We think the heirs at law of the testatrix upon her decease, took an interest in her estate, otherwise undisposed of, if any, by virtue of the thirteenth article, and that under that article this first part on the death of Mr. Webster goes to them, that is to those who now legally represent the two daughters of the testatrix, or who claim by succession under them or either of them.

By the terms of the eleventh article of the will the surplus income of this first part, if any remains after the payment of one half the annuities, is to be paid to the lineal descendants of the granddaughters *per capita*, if any then live, and if not, to the heirs at law of the testatrix. Whether this

disposition of the surplus income is a valid one or not, we have no occasion to consider; for the question is one of no practical importance now, inasmuch as all parties in interest have agreed to treat all the payments of income actually made heretofore, as rightfully made.

The next question is to whom does the second part go on the death of Mr. Webster. Under the eleventh article of the will as originally drawn, this second part, on the death of both granddaughters, was to " be divided and distributed equally to their children *per capita*." These words as here used are, we think, equivalent to words of conveyance, and import a gift to the great-grandchildren as a class, for they are the only words made use of in limiting the second part to them. *Belfield* v. *Booth*, 63 Conn., 299. The material question is whether they import a present gift, taking effect in point of right at the death of the testatrix, or one taking effect in point of right at the death of both granddaughters; and we think the former is the true construction. That the general purpose and intent of the testatrix in disposing of this second part was chiefly to benefit the class of great-grandchildren, two of whom were in being when the will was made and when it took effect, cannot be doubted. The members of that class, born and to be born, would naturally be the preferred objects of her bounty after she had made what she deemed sufficient provision for their parents and her own two children. The gift to this class is neither in terms, nor by any necessary implication, contingent, nor is the vesting of the estate in its members, in point of right, at her decease, in terms, or by any necessary implication, postponed to some future period. We think there is, in the eleventh article of the will, a gift of this second part, first to the great-grandchildren as a class in equal shares by way of remainder; second a gift over by way of executory devise, contingent upon the death of any member of the class before the period of enjoyment, to the issue or descendants of such deceased member; and third in default of such issue, to the heirs at law of the testatrix. We think this gift to the great-grandchildren as a class, vested in point of right at the

death of the testatrix in the then two members constituting the class, and in those after born as soon as born ; subject, if the limitations over were valid, to be defeated as to any of them by death before the period of enjoyment. *Austin* v. *Bristol,* 40 Conn., 120; *Dale* v. *White,* 33 id., 294; *Farnam* v. *Farnam,* 53 id., 261; *Belfield* v. *Booth,* 63 id., 299.

What then is the period fixed for enjoyment ? We think it was the death of the surviving granddaughter. It is quite manifest from the eleventh article as originally drawn, that the entire beneficial interest in this second part was to go on the death of both granddaughters to their children in equal shares. The only difference which the added provision for the husbands made, was to charge this second part with what might become an additional burden during the lives of the husbands after the death of both granddaughters, and as a consequence to postpone its actual distribution till both husbands as well as both granddaughters were dead. It is clearly the intent of the testatrix in the will as finally written, that the great-grandchildren shall, at the death of both granddaughters, take the entire beneficial use and enjoyment of this second part, subject only to the charge upon it made in favor of the husbands. As all the great-grandchildren were alive at the time of the death of Mrs. Edmond in 1878, we think this second part then became fully and completely vested in them, both in point of right and enjoyment, subject only to the rights of the husbands of the granddaughters ; and this renders it unnecessary to consider either the effect or the validity of the limitations over in case of the death of any of them before the period of enjoyment; for if such limitations or any of them were obnoxious to the statute of perpetuities, their invalidity would not disturb the prior estate vested in the great-grandchildren ; and if, on the other hand, they were all good, yet the event never happened on which they were to take effect. It follows that since the death of Mrs. Edmond this second part has been the property of the great-grandchildren in equal shares, and that consequently on the death of Mr. Webster it should go to them in equal shares.

The Superior Court is advised as follows :—

First: The fund of eight thousand dollars with its accumulations, if any, should be at once paid over, one half to the executor of Mrs. Webber, and one half to the executor of Mr. Spalding.

Second : The other half of Mrs. Hubbard's estate should be kept intact until the death of Mr. Webster, and the income thereof from the death of the last annuitant up to the death of Mr. Edmond be disposed of as follows: One fourth to Mr. Edmond or to his executor or administrator, one fourth to Mr. Webster, and the balance to the four great-grandchildren in equal shares. Since the death of Mr. Edmond said income should go, one fourth to Mr. Webster and the balance to the four great-grandchildren in equal shares.

Third : This entire half of Mrs. Hubbard's estate should be divided on the death of Mr. Webster into two unequal parts as of the date of Mrs. Edmond's death, under the rule given in the eleventh article of the will, and the part hereinbefore designated as the first part should then be divided equally between the executor of Mrs. Webber and the executor of Mr. Spalding, while the second part, so called, should then be divided and distributed among the four great-grandchildren in equal shares.

In this opinion the other judges concurred, except *Hamersley, J.*, who dissented.