JOHN M. JOHNSON, TRUSTEE, *vs.* MARY E. CHILDS AND
OTHERS.

New London Co., May T., 1891. ANDREWS, C. J., CARPENTER, SEY-
MOUR, TORRANCE and FENN, Js.

*Z* by his will gave estate to his son *T*, to be held in trust for the use of *T*'s
children, with a right to delegate the trust or by his will to appoint new
trustees, and with a right on the part of the trustees to continue the
trust so long as either of *T*'s children should live, but also at their dis-
cretion to close the trust at any time and deliver the property to the
children or their legal representatives. *T* died without having closed
the trust, and by his will, after stating the trust, bequeathed all the
property to certain trustees named, for the use of his children and
their heirs, the income to be from time to time divided equally among
the children, the legal representatives of any who should die to take
the parent's share, and if any of the children should die while the trust
continued, his or her share to belong to his or her children or their
legal representatives. *T* left four children. Held that by the word
"share" as used in the last clause, was meant, not a share of the in-
come but of the corpus of the estate, and that, upon the death of any
one of the children, one fourth part of the principal of the trust fund
vested, free from the trust, in the issue of such deceased child.

The discretion on the part of the trustees, to terminate the trust when they
thought it best, came wholly from the will of *Z*, and it seems that when
*T* exercised that discretion in his own will, he left no discretion in the
matter to be exercised by the trustees under his will.

[Argued May 27th—decided August 5th, 1891.]

SUIT to obtain a construction of provisions in the wills of
Zachariah and Thomas M. Huntington; brought to the
Superior Court in New London County and reserved for
the advice of this court. The case is fully stated in the
opinion.

*J. Halsey*, with whom was *W. A. Briscoe*, for Mary E.
Childs and Thomas M. Huntington.

*J. Byrne*, of New York, and *M. W. Seymour*, for Austin
Huntington, Mary B. Huntington and Alice Henderson.

*S. A. York*, for George W. Huntington, Curtis W. Hun
tington, and Wolcott G. Huntington.

FENN, J. This is a suit claiming a construction of cer-
tain provisions in the wills of Zachariah Huntington, who
died in June, 1850, and of his son, Thomas M. Huntington,
who died in September, 1851, both late of Norwich in this
state. The case was reserved for advice.

It appears from the record that said Thomas left at his
decease four children, all born in the lifetime of Zachariah,
one of whom still survives, and three of whom are now de-
ceased, but each leaving issue now living; and that a cer-
tain trust, hereafter more fully referred to, was created by
the will, which has been duly administered, and that the in-
come of the estate, so placed in trust, has been paid over by
the trustee, " to the four children of Thomas M. Hunting-
ton, and the representatives of three of said children who
had died, from time to time, the children of a deceased child
receiving that portion of said income to which their parent
was entitled in his lifetime." Certain of the parties claim
" that the said trust terminated, as to the respective share
of each deceased child of said Thomas M. Huntington, upon
the decease of such child, and that thereupon one fourth part
of the principal of said trust estate vested, free of the trust,
in the issue of such deceased child; and further, that if said
trust did not so terminate, as to said respective shares, by
operation of law, said trustees may, in their discretion, termi-
nate the same as to the share of either of the children of
said Thomas M. Huntington." Others claim that "said
trust continues, as to the entire trust estate, until the death
of the last surviving child of said Thomas M. Huntington,"
and this presents the question which we are called upon to
decide.

That portion of the will of Zachariah Huntington, mate-
rial to be considered, is as follows :—

" All the rest and residue of my estate, both real and per-
sonal, I give, devise and bequeath to my son, Thomas M.
Huntington, so as to vest in him the legal estate therein

but the same is to be by him held in trust for the use and benefit of my grandchildren, the children of my said son, subject to the provisions and limitations hereinafter expressed and contained. * * *

" And my further will is, that in case my said son shall at any time require for his own use any or all of the income of the said property so held in trust as aforesaid, and shall by writing under his hand and seal so appropriate any part or the whole of said income, he shall have full power and authority so to do, and, in such way as he shall consider proper, may use and dispose of such part of said income so by him required as aforesaid; it being however always understood, and it is hereby declared and ordered, that all such part of said income as shall not have been received and appropriated by my said son as aforesaid for his own use, shall be and remain and be held in trust for the use and benefit of my said grandchildren as is hereinafter provided.

" And my further will is, that such trustee or trustees may hold such property, or any part thereof, in trust as aforesaid, so long as either of the children of my said son shall continue in life, subject to the several provisions herein contained; but said trustee or trustees may at any time, and from time to time, at his or their discretion, pay, transfer and deliver the said property, or any part thereof, to said children or either of them, or to the legal representatives of any of them who shall have deceased, in such manner and upon such terms and conditions as said trustee or trustees shall consider expedient and proper, and said trustee or trustees may, at his or their discretion, pay and divide such property or any part thereof, as well as the income of such property, to and among said children, and the legal representatives of any of them who shall have deceased, in equal or unequal proportions, as said trustee or trustees shall consider expedient; and with full power to impose and prescribe such terms and conditions in relation to the parts so distributed as he or they shall consider proper, and such trustee or trustees may exercise as full and ample discretion in

the premises as I myself could do in relation to the same if in life.

"And in case my said son should for any reason desire to be released from said trust, as to any or all of said property, or to associate any other person or persons with him in the execution of said trust, he may, by deed or deeds, under his hand and seal, executed as by law required for the conveyance of real estate, convey any part or all of said estate to such other trustee or trustees, jointly with himself or otherwise, as he shall think proper, to constitute and appoint for the purposes aforesaid, with the like power and discretion, or such appointment may by him be made in and by his last will and testament, executed as by law required for the devise of real estate; and, by such last will and testament so executed as aforesaid, my son shall have full power and authority to order and appoint in what manner and in what proportion, and upon what trusts, if any, said estate so held in trust as aforesaid shall be divided to and among his said children or their legal representatives."

The will of Thomas M. Huntington, after reciting the trust created by his father's will, and his desire to execute the same, devises and bequeaths all the estate, real and personal, so devised and bequeathed to him in trust, to certain trustees named, and the survivors of them and their successors, in trust for the use and benefit of his children and their heirs; and after certain provisions, unnecessary to be quoted, it contains this language :—"And the income of said trust fund shall, from time to time, be divided by said trustees equally to and among such of my said children as may be living and the legal representatives of any who shall have deceased. And in case either of my said children shall die whilst said property shall be held in trust as aforesaid, his or her share shall be and belong to his or her children, or their legal representatives, if any such there be, but such child so dying may, by his or her last will and testament, divide his or her share of said personal estate, at his or her discretion, among his or her children. And if any of said children shall die without having children, his or her share

in said trust fund shall be divided equally among his brothers and sisters surviving, and the representatives of any deceased child."

. On the part of those who claim that the trust should be held to continue as to the entire trust estate until the death of the last surviving child of said Thomas M. Huntington, it is urged that the will of said Thomas is merely the execution of a power conferred by the will of his father, Zachariah; that the estate bequeathed and devised is the estate of Zachariah remaining unexpended in the hands of Thomas, and to be disposed of under the provisions of the will of Zachariah; that the general prevailing intention to be gathered from the will of Zachariah should be a key to the intention of Thomas, and that if an intent common to both wills can be discovered, that intention, if consistent with the rules of law, is to govern in the construction; and it is then said that the purpose of Zachariah, as gathered from the provisions of his will, was to keep the corpus of the estate intact, as long as he could lawfully do so, and at the same time afford his son every opportunity to pursue the same course in the succeeding generation; and that the provisions of the will of Thomas evince the same purpose of preserving the corpus of the estate intact as long as might legally be done, while affording his children the opportunity of constituting a new trust for the succeeding generation.

We have carefully examined this claim, but are free to say we discover little in it which affords real assistance in solving the question presented, for we fail to find in the will of Zachariah any indication of a desire that the corpus of the estate should be kept intact beyond the lifetime of his son Thomas, who was to hold the same in trust for the benefit of his children, all of whom were born in the lifetime of said Zachariah. It is indeed provided that said trust might continue, as to the whole or any part of the property, so long as either of the children of said Thomas lived, and that said Thomas should have a power of appointment (which power he in fact exercised) by his will. But we do not see in this, or in any provision of the will of said Zachariah, any-

thing to lead us to believe that such continuance intact of the corpus of the estate, beyond the death of said Thomas, though permitted if found desirable by the trustees, was desired by the testator. For this reason it becomes quite unnecessary to consider whether such an intent to continue intact, by successive trusts, from generation to generation, the corpus of the estate of the first testator, in the manner suggested, should receive the implied sanction of a court which sustains in full vigor, as consonant with the public policy of the state, both the statutory enactment and the common law rule of perpetuities. We think the question whether the trust terminates as to the respective share of each deceased child of said Thomas upon the decease of such child, can best be answered by looking at the will of said Thomas, and determining his intention as gathered from that instrument standing alone and without any reflected light from the provisions of his father's will; such light, in our opinion, being neither afforded nor essential.

Nor do we see in the will of Thomas M. Huntington evidence of a purpose to preserve the corpus of the estate intact so long as might legally be done, but rather only so long as may best secure to his grandchildren the benefit of such estate. In the disposition of the estate it will be seen that four contingencies are provided for:—(1st.) a child dying before the testator; (2d.) a child dying after the testator, intestate, leaving issue; (3d.) a child dying after the testator, testate, leaving issue; (4th.) a child dying after the testator, without issue.

The second of these contingencies is the one which has in fact occurred, and the query resolves itself into the consideration whether, in the language used by the testator in providing for this contingency by the word "share," he intended share of the income or share of the corpus. Now in providing for the first contingency the testator used this language:—"The income of said trust fund shall, from time to time, be divided by said trustees, equally to and among such of my said children as may be living and the legal representatives of any who shall have deceased." This is

clearly a bequest of income to the testator's children and to the issue of any who may have pre-deceased him, and it is urged by those who claim that in the second contingency the trust was intended to continue and to hold the estate intact until the death of the last survivor of the children of Thomas M. Huntington, that there is no apparent reason why there should be any different disposition in the case of a child dying intestate, after the testator, leaving issue, and that therefore the word "share," as used in reference to such contingency, should be held to mean a share of the income as distinguished from a "share of the personal estate" or a "share in said trust fund," terms used in the subsequent provisions. And this claim is the basis of the whole argument for such construction.

Whatever may have been the motive which inspired the provision as to the division of the income in the first contingency, concerning which it would be easy to speculate but impossible to determine with certainty, the argument to which we have referred, from presumed analogy, is indecisive, since any presumption that the testator would make no distinction between the issue of a child dying before himself and the issue of a child dying after his own decease, would seem to be the same whether the child dying after himself died intestate or testate, and if the latter, a clear distinction is made; and it may be said, we think, with equal force, that presumably the testator would make no distinction, as to the continuance of the trust, in the case of a child dying after himself leaving issue, dependent upon whether such child died testate or intestate; especially as it appears that the only power conferred upon such testate child is to "divide his or her share of said personal estate at his or her discretion among his or her children;" in other words, to make an unequal instead of an equal division among such children. And then, also, the language used in providing for the first contingency, and that in reference to the second, are most dissimilar. In the former the income of the entire trust fund is the subject matter which is from time to time

to be divided equally to and among living children and to the legal representatives of any deceased.

The final date of the termination of the trust, by the division of the fund itself, is, by a presumed omission, wholly unconsidered and unprovided for, and might, if the contingency thus contemplated had actually arisen, have caused much complexity. But in the case of the next and present contingency, to which reference occurs in an entirely separate clause, nothing is said of any division, either from time to time or at once, of anything as "income" (which term is not used in this clause) or "share," (which term was not used in the preceding clause); but a declaration as to title, right and interest; the language being—"in case either of my said children shall die while said property shall be held in trust as aforesaid, his or her share shall be and belong to his or her children, or their legal representatives, if any such there be, but such child so dying may, by his or her last will and testament, divide his or her share of said personal estate at his or her discretion, among his or her children." So that, in order to derive the meaning claimed, we have to detach the word "share" from its grammatical antecedent, "said property," and refer it to a preceding and separate clause, which relates solely to division of income, and makes no reference to ultimate title and right; and also to divide the single paragraph which we have cited, so that instead of simply providing, in the concluding portion, that a child dying might by testament divide what was expressly declared to be such child's "share" unequally among its issue, a distinction should be thereby created as to whether such child ever had, or was entitled to, such share of "personal estate," or only of "income," dependent upon the exercise of such disposition. In other words, that the term "share," twice used in this clause, and not before used, but again employed in the next clause, had an entirely different meaning in its first from what it had in either of its other uses, and that the issue of a deceased child, dying intestate, taking equally, could receive no share, because their ancestor had none to transmit by descent, and none came to them by the will of

the testator, Thomas M. Huntington, but the issue of a deceased child, dying testate, taking unequally, could receive a share, because their ancestor had one to transmit by devise, or was empowered so to transmit, unequally, to those who could not take equally under the former will. It is said, indeed, in the brief of counsel, that in the latter case "such share is to pass and vest, not by the will of Thomas M. Huntington, but by that of the child so dying." But how can title to a share pass by the will of one who has himself no title to the share? If it be answered that it is not by virtue of title, but by that of a power of appointment, that the dying child had really no share of its own in said personal estate, granting this, does it not prove that if the testator used his language with any proper conception of its meaning, by the word "share," as applied to his own children, he meant simply that share of the corpus of the trust fund which would arise from its division into as many parts as would equal the number of his children? That he used the word "share" in the clauses providing for the second, third and fourth contingencies, in distinction from the word "income" in the clause relating to the first contingency, and that the three expressions "share," "share of said personal estate," and "share in said trust fund," are equally apt, commonly speaking, and equally incorrect, technically speaking, expressions of the same meaning.

It is further said by counsel that, in case of a child dying without issue, the provisions of the will that the share of such child in the trust estate shall be divided among the survivors and the representatives of any deceased child, contains a clear direction, and the terms used are different from those appearing in any other section of the will. But the same thing may be said of the first clause, as to income; and if any further argument from analogy were requisite in support of the view that by the word "share," whenever used, the testator always intended the corpus, and not, in the instance under consideration, only income, it might be abundantly supplied from considerations in relation to this last

clause in the will; but none seem to be called for, since the intention of the testator appears manifest.

The conclusion which we have reached of course renders it unnecessary to consider whether, if the trust did not terminate by operation of law, the trustees might, at their discretion, terminate the same as to the share of either of the children of said Thomas M. Huntington.   We will, however, say that this discretion is derived solely from the will of Zachariah Huntington, and that it seems to us that when Thomas M. Huntington exercised, in his own will, the discretion vested in him by his father's will, he left no discretion to be exercised by the trustees under the latter instrument.

Certain other questions were raised, as to whether the principal of the estate is undisposed of, and is therefore today an intestate estate; and whether the power given to Thomas is so extensive as to vest in him the fee to the entire estate;—propositions which none of the parties before us desired us to affirm, but which we mention lest otherwise an unwarranted inference might hereafter be drawn from the record.   A decision not being asked for, or necessary, the questions are not considered.

The Superior Court is advised that the trust created terminated as to the respective share of each deceased child of said Thomas M. Huntington, upon the decease of such child, and that thereupon one fourth part of the principal of said trust estate vested, free from the trust, in the issue of such deceased child.

In this opinion the other judges concurred.