RICHARD T. STEELE, TRUSTEE (ESTATE OF ANNIE B. HARMON) *v.* DORIS H. LEETE ET AL.

SUPERIOR COURT     HARTFORD COUNTY     FILE NO. 149350

Memorandum filed May 21, 1968

*Leonard G. Tracy,* of Hartford, for the plaintiff Steele, trustee.

*Day, Berry & Howard,* of Hartford, for the defendant Steele, administrator.

*Thomas F. Gallivan, Jr.,* of Bloomfield, for the defendants Barclay, Jr., and Barclay, administrator.

*W. Harmon Leete,* of Hartford, for the defendants William H. Leete et al.

*Shipman & Goodwin,* of Hartford, for the named defendant.

*Alfred V. Covello,* of Hartford, guardian ad litem, for Lisle B. Leete et al.

GRILLO, J. By this action the plaintiff, trustee under the will of Annie B. Harmon, deceased, seeks advice as to the construction of the will (article III) and propounds questions, relative to said paragraph, claimed to be pertinent to the trustee's duties under the will.

Article III of the will reads as follows: "All the rest, residue and remainder of my property, both real and personal, and wheresoever situated, I give, bequeath and devise to my Trustee hereinafter named and to his successor or successors, IN TRUST, the net income therefrom to be paid annually, semi-annually, or quarterly as my said Trustee may determine, one-half to my daughter Doris Harmon Leete, and one-half to my daughter Ruth Harmon White, during their respective lives, provided, however, that if my daughter, Doris Harmon Leete, shall die before either of her children shall attain the age of twenty-five (25) years, said net income shall be paid to said children and such part of the principal as may be necessary for the education of said children may be used by my Trustee for that purpose. When each of the children of my said daughter shall attain the age of thirty years he shall receive one-half of the property then remaining, to be his absolutely, provided, also, that if there shall be children of my said daughter living at the time of my decease, or born to my daughter within twenty-one years after my death, other than William Harmon Leete and Robert Burnap Leete, said child or children shall share equally with the two children now living, both as to income and principal; provided, further, that if my said daughter, Ruth Harmon White, shall leave issue her surviving, said issue shall take absolutely the share herein set out to my said daughter, Ruth Harmon White, but if she shall leave no issue her said share set out to her shall go to the children of my daughter, Doris Harmon Leete."

From the phraseology of this paragraph there has grown a semantic thicket seemingly impenetrable to a point where not only is the trustee understandably lost therein but estate representatives of the long dead to the yet unborn have appeared in a

commendable effort to clear this woody growth of vexing verbiage. It is obvious that the varied arguments of the parties have their origin in the differences of opinion generated by the legally nebulous clause, "said issue [of Ruth Harmon White] shall take absolutely the share herein set out to my said daughter, Ruth Harmon White."

The will in question was executed on July 1, 1938. The testatrix died on July 18, 1943, leaving as her only heirs two daughters, Doris Harmon Leete and Ruth Harmon White Barclay. Mrs. Barclay succumbed on July 12, 1966. She had married Hugh Barclay, Sr., in 1940. Doris Leete has three sons. Mrs. Barclay was survived by one son, Hugh G. Barclay, Jr.

Fundamentally the problem posed herein relates to the authority of the trustee relative to the distribution of one-half of the trust estate, the net income from which was received by Ruth Barclay until her death.

Whom did the testatrix refer to in employing the word "issue"? Since the word was used to describe lineal descendants of every degree and since further, the testatrix attempted to create a succession of life estates, the rule against perpetuities has been violated, it is asserted, and the attempt fails. The bequest is void, it is claimed, under the rule of such cases as *Pond* v. *Porter,* 141 Conn. 56, 67. Consideration, therefore, must first be given to the testatrix' intent in using the word "issue."

The word "issue" is ordinarily construed to mean "children" where it has been used interchangeably by the testator with the word "children." 57 Am. Jur. 919, Wills, § 1381. In construing a will, the court will put itself as far as possible in the position

of the testatrix to construe the uncertain language employed by the testatrix, including her relation to her family and the beneficiaries. *Hoops* v. *Stephan,* 131 Conn. 138, 143. Here the stipulated facts eloquently demonstrate the closeness of the testatrix and her daughters and her love for them. She showered her maternal love and affection (and material things) upon them equally. She was meticulous in her desire to treat both with equality. Presumably, the grandchildren received the same attention and devotion without partiality. The account of her special effort to be with her new grandson, Hugh G. Barclay, Jr., Ruth's child, while she was in pain with a terminal disease is adequate evidence of this. Likewise did she enjoy the company of Doris' children. They filled a void in her life occasioned by her only son's death at eleven years of age.

The will leaves no room for doubt that Doris Harmon Leete and Ruth Harmon (White) Barclay were each given a one-half life interest (net income) in the trust estate. They were treated with equality. No reason, plausible or otherwise, has been advanced as to why the testatrix, in providing for the disposition of one-half the trust estate after the death of Doris Harmon Leete, should desire Doris' children alone to benefit, while in making arrangements for the disposition of that portion of the estate from which Ruth received a life income (after the death of Ruth Barclay) she would be concerned not alone with Ruth's children (if she had any) but also with future generations, i.e., lineal descendants. This result would not be in keeping with her penchant for equality in her relations with her children and grandchildren and as such would be diametrically opposed to her modus operandi. To ascribe to the word "issue" its primary meaning (all future descendants) would be to attribute to the testatrix

an intent to make invidious distinctions, between Ruth and Doris, for which no reasonable explanation appears. *Second National Bank of New Haven* v. *Townsend,* 130 Conn. 631, 639.

Still another plausible reason suggests itself as to why, in referring to Doris Leete's offspring the word "children" was adopted while the term "issue" was employed in relation to Ruth Harmon White Barclay. At the time of the execution of the will (1938), Ruth, thirty-four years of age, unmarried and childless (she had been divorced), resided with her widowed mother and maiden aunt in the family homestead in Suffield (population, 4346, circa 1930). Doris Leete lived elsewhere with her husband and children. The court takes judicial notice that in 1938 (depression year) an unmarried lady in her mid-thirties living in the small bucolic town of Suffield with a widowed mother to whom she was greatly attached and a maiden aunt could not expect that swains bent on marriage would beat a path to her door. Thus the testatrix used the word "children" in reference to Doris Leete's family since her having children was a fait accompli, whereas the possibility of Ruth Barclay's marrying and having children conceivably seemed remote to her mother. It is not unlikely that Ruth's mother, however, in a desire not to foreclose an inheritance to children Ruth might bear, used the word "issue" (a term implying futurity) in recognition of the remote possibility of Ruth's having children. For her to have used the word "children" with reference to Ruth would have been unrealistic in view of Ruth's status when compared with that of Doris, who already had a flourishing family. That probably accounted for the use of the two words to convey the same idea. We conclude that the word "issue" is to be construed as meaning children—all of whom, i.e., Ruth's and Doris', would under the facts as stipulated be the

natural objects of their grandmother's bounty without distinction. *Beardsley* v. *Johnson,* 105 Conn. 98, 104.

There remains the question as to what interest was given Hugh G. Barclay, Jr. The language lends itself to three possibilities: (a) Hugh G. Barclay, Jr., takes his mother's share, which is a life interest in one-half the trust for the life of Ruth Harmon White Barclay—an absurdity, since under such an interpretation he would take nothing. (b) Hugh G. Barclay, Jr., takes a life interest in one-half the trust during his lifetime. Such an interpretation would result in the conclusion that since nothing is said relative to the principal, the testatrix intended to have one-half of the principal pass under the laws of intestacy. By making a will, a testator demonstrates his intention to avoid intestacy, total or partial. *Ansonia National Bank* v. *Kunkel,* 105 Conn. 744, 750. A construction avoiding intestacy is preferred. *Hartford National Bank & Trust Co.* v. *Harvey,* 143 Conn. 233, 242. Furthermore, a residuary disposition of property, as here, serves to enforce the presumption that the testatrix intended to dispose of all of her property. *Bronson* v. *Pinney,* 130 Conn. 262, 271. (c) The third possibility is a vested interest. The word "share" refers to the fractional portion of the trust estate that the issue of Ruth Harmon Barclay was to take, i.e., one-half. That is to say, the issue, Hugh G. Barclay, Jr., upon the death of Ruth, would take the same fractional portion of the principal of the trust estate that was set out to Ruth Harmon (White) Barclay as a life tenant, i.e., one-half. *Johnson* v. *Childs,* 61 Conn. 66, 74. And certainly by use of the word "absolutely" the testatrix intended the gift to pass without dependence on any other person or event. Black, Law Dictionary (4th Ed.); *In re Estate of Darr,* 114 Neb. 116, 119; Black, Law Dictionary (4th Ed.).

Guided by the above principles of law and considering the stipulated facts previously related relative to the relationship between grandmother and grandchild, we conclude that Hugh G. Barclay, Jr., has a vested interest in one-half of the principal of the trust estate of Annie B. Harmon.

The court has noted that neither the pleadings, the stipulation, nor the briefs indicate that any problem has arisen with reference to the interest of Doris Leete or her children in that half of the trust estate. There is no need to give advice where the question is not one affecting the present administration of the estate. *Hill* v. *Wright,* 128 Conn. 12, 18. Thus, to questions (B), (C), (D), (E), (F), and (G), it is adjudged that no answer should be made for the reasons above advanced and because the answer to question (A) renders an answer to them unnecessary. The trustee states: "The problem is what gift was intended and given by Annie B. Harmon to the surviving issue of Ruth Harmon White (Barclay)." This opinion answers that question.

Counsel fees have been requested, but no evidence was presented on the basis of which the court could determine the amount or the source of the claimed fees. A hearing upon proper motion at a short calendar session might possibly be the proper avenue of approach for the determination of this aspect of the matter.

It is adjudged that the construction of the will of Annie B. Harmon is as follows: To question (A): Does Hugh G. Barclay, Jr., the sole issue of Ruth Harmon (White) Barclay, deceased, have a vested interest in one-half the principal of the trust estate of Annie B. Harmon? We answer "Yes."

Counsel are commended for their helpful briefs.

Judgment may enter accordingly.