HENRIETTA M. HEWIT ET AL. *vs.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Third Judicial District, Bridgeport, April Term, 1898. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

*H*, who owned land in fee, subject to the life use of his sister *C*, quitclaimed all his title to " the children of *C* who shall be alive at her decease, and the issue of any child or children, if there be any, their heirs and assigns, in equal shares *per stirpes*, to have and to hold unto the said releasees, their heirs and assigns forever." The deed stated that the intent was " to release to my sister's (*C's*) children this property, which their grandfather intended to convey

to them by will." At its date *C* was 61 years old and had six children living, and five grandchildren, the children of one of her sons. In a suit to determine the respective rights of the parties, it was *held* :—

1. That the main object of the grantor evidently was to provide for the ownership and enjoyment of the land after *C's* decease.

2. That the possibility that some of the members of the class described therein as grantee,—a class whose membership could not be definitely ascertained until *C's* death,—might be persons who were neither in being when the deed was delivered, nor the immediate issue of such persons, rendered the whole conveyance invalid under the statute (General Statutes, § 2952) against perpetuities then existing.

A covenant to stand seized to uses, or a declaration of trust, intended to serve an estate in land forbidden by statute, is void *ab initio.*

[Argued April 28th—decided June 24th, 1898.]

ACTION to determine the respective rights of the parties in and to certain real estate, brought to the Superior Court in Fairfield County and reserved by that court, *Thayer, J.,* upon an agreed statement of facts, for the consideration and advice of this court. *Trial court advised that defendant has full legal and equitable title to the land.*

The deed in question was executed and delivered in 1886 by Samuel H. Hurd, and purported, " for the consideration of one dollar, received to my full satisfaction of Catherine S. Hewit," to release all his title to certain land in Bridgeport, " unto the children of the said Catherine S. Hewit, who shall be alive at her decease, and the issue of any child or children, if there be any, their heirs and assigns, in equal shares *per stirpes,*" *habendum,* " unto the said releasees, their heirs and assigns forever." It was added that " the intent of this instrument is to release to my sister's children this property, which their grandfather, Samuel F. Hurd, intended to convey to them by his will dated February 1st, 1854, now on file on record in the Probate Court of the district of Bridgeport." At the date of the deed, the releasor owned the land in fee, subject to the life use of his sister Catherine S. Hewit, who was 61 years old and had living six children and, by one of her sons, five grandchildren. The deed was recorded in 1886. Mrs. Hewit, in 1897, released her interest to Hurd,

and he thereupon executed and delivered to the defendant railroad company a warranty deed of the land. At this time five of her children were living, and several were married and had children living.

The suit was originally brought against the New York, New Haven and Hartford Railroad Company alone, and came in that form, upon a reservation, before this court at a previous term, when the court declined to hear it, and remanded it to the Superior Court, in order that all the children of Mrs. Hewit and their living issue might be made parties. This was subsequently effected.

The plaintiff was one of the children of Mrs. Hewit, and asked for an adjudication of the rights of all claiming under either deed. The New York, New Haven and Hartford Railroad Company alone appeared to defend, and filed an answer claiming an absolute title to the land in question, under the second deed.

*Morris W. Seymour*, for the plaintiffs.

The deed does not sin against the statute of perpetuities. The true interpretation of this instrument is to vest an immediate estate in the children of Catherine S. Hewit, subject to have the same divested upon the death of any such child before his or her mother. The fact that the enjoyment of the estate is postponed until after such death, ought to make no difference. But assuming that this estate did not vest until after the death of Catherine S. Hewit in any one, we submit that this deed vests this estate in persons in being, or their immediate issue or descendants. The word "heirs" is a word of limitation and not of purchase, vesting the estate absolutely. *Chappell* v. *N. Y., etc., R. Co.*, 62 Conn. 195, 202. Again, this is shown by the use of the word "assigns." The words, "and the issue of any child or children," vest the estate not indefinitely in heirs, but the immediate issue of the children of Catherine S. Hewit. There is no contingency that could happen which would prevent this estate from vesting absolutely in the children or grandchildren of Catherine S. Hewit, upon her decease.

*William D. Bishop, Jr.*, for the defendant.

The deed is void for violating the statute against perpetuities. Whatever meaning this document has, if any, we believe it is beyond question that the description of the grantees includes some of the descendants of Mrs. Hewit's children. On that assumption the deed is void, whether an interest vested at once in such of Mrs. Hewit's children and their descendants as were *in esse* at the delivery of the document in 1886, subject to open and let in after-born persons of the same description, or at some later time. In either event the interests of each grantee are bound up with those of all the rest, and must stand or fall with them. *Leake* v. *Robinson*, 2 Meriv. 363; *McArthur* v. *Scott*, 113 U. S. 340, 382; *Leake* v. *Watson*, 60 Conn. 498, 512; Gray on Perp. §§ 215, 373.

BALDWIN, J. Deeds, like all other contracts, are to be construed so as to carry out the intent of the parties to them, if this be permissible under the rules of law. In the quitclaim deed given by S. H. Hurd, in 1886, the intent is stated to be to release his title to his sister's children. She then had six living, and it would have been a simple matter, had that been his sole purpose, to make the conveyance directly to them. The language of the deed, however, is such as to show that there was a further intent to provide for the contingency of the death of any of them, during their mother's life. So long as that continued she had the full use of the land under a prior title, and it is evident that the great object of the parties was to provide as to its ownership and enjoyment after her decease.

To accomplish this purpose they undertook to create a freehold estate to commence *in futuro*, without any precedent estate to support it, and in favor of persons who were not to be definitely ascertained until the event should occur, upon which it was thus to commence. The grantees were a class which was not to be formed until the termination of Mrs. Hewit's life. It was to be composed of her children "who shall be alive at her decease, and the issue of any

child or children, if there be any." It must be presumed that the releasor when he gave the deed, knew that one of his nephews then had several children. His reference to "the issue of any child or children, if there be any," must therefore be deemed to include only such issue of any child or children as might survive Mrs. Hewit. The same contingency which applied to her children was to apply to their issue, and constituted a condition precedent to the vesting of any estate. To construe the deed as giving to the children who were in being, when it was delivered, and to their issue then in being, any present interest, would be to disarrange the general scheme for an equal distribution, and might virtually double the share of James H. Hewit. He then had five children. His brother and sisters had none. If he and these five children could be regarded as invested by the deed with defeasible estates, or one subject to a conditional limitation, to become absolute should they survive Mrs. Hewit, then, upon that event, he would come into the enjoyment of one share of the estate and his children into that of another and equal one.

The words of limitation, which follow the description of the releasees, "their heirs and assigns, in equal shares, *per stirpes*," and the *habendum* clause, which runs "unto the said releasees, their heirs and assigns forever," show that whoever was to take the estate released was to take it in fee simple, and to receive a share no larger than that naturally belonging to his line of descent.

The statute against perpetuities which was in force in 1886 (General Statutes, § 2952) provided that no estate should be given by deed to any persons but such as were in being at the time of its delivery, or to their immediate issue or descendants. The deed in question purported to give an estate to a class to be formed at the decease of a person named, some of the members of which might not be either persons who were in being at the time of its delivery or children of such persons. A grandchild of Mrs. Hewit might have been born after 1886, who would die before her, surviving his own parent, and leaving children. The latter

would then take as purchasers under the terms of the deed and, should Mrs. Hewit survive all her children and grandchildren, might receive the entire estate. As they would not be the children of a person in being when the deed was delivered, these terms could not, in the event supposed, be given legal effect; and the possibility of such a result invalidates the whole conveyance. *Leake* v. *Watson*, 60 Conn. 498, 512.

If it can be regarded as a covenant to stand seized to uses or a declaration of trust, the equitable interest derivable from it would arise in favor either of Mrs. Hewit as the party contracted with, or of certain of her descendants, as the parties in whose behalf the contract was made. The contract was for the creation of an estate which the statute made it impossible to create, and for nothing else. The trust was therefore for an illegal purpose, and void from the beginning.

It is unnecessary to consider any other of the numerous objections urged against the validity of the deed, as that founded on the statute of perpetuities is decisive.

The Superior Court is advised that the deed of August 18th, 1886, was void *ab initio*, and that the New York, New Haven and Hartford Railroad Company has the full legal and equitable title to the land in question.

In this opinion the other judges concurred.