WALTER D. DASKAM ET AL., TRUSTEES, *vs.* ROSALIE
DIMON LOCKWOOD ET ALS.

Third Judicial District, New Haven, June Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

The statute of perpetuities in force at the testator's death in 1882
invalidated any gift of an "estate in fee simple, fee tail, or any
less estate, . . . to any persons but such as are, at the time of
making such deed or will, in being, or to their immediate issue
or descendants." *Held* that the phrase "at the time of making
such deed or will" meant at the time of the delivery of such
deed or the death of the testator.

This statute applied equally to all gifts, whether of real or of
personal estate or of both, which might by any possibility offend
against its terms.

It is a fundamental rule in the construction of wills that a testator
is always presumed to use the words in which he expresses
himself according to their strict and primary acceptation, unless
it appears from the context that he used them in a different
sense.

The primary and usual and, therefore, presumptive meaning of the
term "issue" when used in a will as a word of purchase, includes
descendants of every degree; but if it appears that the testator
used it in its more restricted sense of "children," it will be so
interpreted.

If language in a will is open to two constructions, one of which will
render a gift illegal and void and the other valid and operative,
the latter construction must be preferred.

A construction of a will which admits children to compete with
their living parents is to be avoided unless such was plainly the
testator's intention.

The testator died in 1882 leaving a will in which, after establishing
a trust in favor of one of his daughters, Mary Ann, he provided
that "in the event of her death, no issue her surviving, said
property shall be equally divided among her brothers and
sisters and their issue *per stirpes,* except the issue ·of my de-
ceased son, Edward, and my deceased daughter, Julia, other-
wise provided for in this will." *Held:*

1. That since the word "issue" was twice used elsewhere in the will
in the sense of "children," and since that meaning, if given to
the clause in question, would save it from illegality as a perpe-
tuity, it must be so construed.

2. That, upon the death of the testator, each of the surviving
brothers and sisters of Mary Ann took a vested interest by way
of contingent remainder, which became fully vested upon the
death of Mary Ann without surviving children.

Argued June 3d—decided July 30th, 1925.

SUIT to determine the construction of the will of
Edward Philips, late of Stamford, deceased, brought
to the Superior Court in Fairfield County and reserved
by the court, *Ells, J.,* upon the admitted allegations of
the complaint, for the advice of this court.

Edward Philips died on November 4th, 1882, seized
and possessed of estate both real and personal. On
October 27th, 1881, he executed a will.

The clauses of his will, upon which the advice of
this court is asked, are the following:

"Ninth. I give and devise to the Executors and
Executrix of this my will, or to such of them as may
qualify hereunder, and the survivors and survivor of
them and their successors, my lot of land known as
Number 161 Suffolk Street in the City of New York,
and the lot adjoining thereto known as Number 163
Suffolk Street in said City, in Trust to let and rent
the same separately or together as they may deem
best, after the expiration of the present lease, and
to pay over the net rents thereof to my daughter
Mary Ann Lockwood, wife of James L. Lockwood, for
and during her life, for her sole and separate use, free
from any control, claim or interference on the part of
her husband and I also give and bequeath to said
Executors in Trust, the sum of Twenty thousand Dol-
lars to invest and keep invested in Bonds of the
United States or of the States of Connecticut or New
York, or in good first mortgages on real estate in the
City of New York or Stamford, Connecticut; and pay
over the income thereof to my said daughter Mary

Ann Lockwood, when and as received, so that she may receive the entire annual income thereof in each year for her sole and separate use, free from any control, charge, claim or oversight of her husband, during the term of her life. At the death of my daughter Mary Ann Lockwood, said property shall be. by my Executors divided per capita among her lawful children; and in the event of her death, no issue her surviving, said property shall be divided equally among her brothers and sisters and their issue per stirpes, except the issue of my deceased son Edward and my deceased daughter Julia Baldwin, otherwise provided for in this will. And I authorize my said Executors, or the survivors or survivor of them, and their successors as aforesaid, to sell said property after the death of my said daughter Mary Ann and to give good deeds of conveyance therefor, and distribute the proceeds thereof, as by me hereinafter directed, but the same is not to be sold during her lifetime."

"Fifteenth. I give, devise and bequeath all the rest and residue of my estate, real, personal and mixed, wherever situate, to my children, Mary A. Lockwood, Alice Leaman, George A. F. Philips, Charles S. Philips and Henry C. Philips, and the survivors of them equally, to be added to the devises and bequests hereinbefore given and bequeathed In Trust to and for them, respectively, and to be held and disposed of, with and in the same manner as the said several devises and bequests."

After the death of Edward Philips the will was duly admitted to probate on November 10th, 1882, and the executors duly qualified. The executors proceeded with the settlement of the estate and turned over to the trustees, who duly qualified, the real and personal property devised and bequeathed in trust by such clauses of the will.

On October 23d, 1921, Mary Ann Lockwood died "without issue her surviving." None of the other children of the testator, the brothers and sisters of Mary Ann Lockwood, survived her, although those living when he executed the will survived the testator. Numerous issue of the brothers and sisters of Mary Ann Lockwood (excluding issue of the testator's deceased son Edward and of his deceased daughter Julia Baldwin) survived her and are now living and are parties to this action, as are also the next of kin of the testator or their issue or representatives.

It is conceded that only the personal property held in trust is involved. The plaintiffs are ready and willing to distribute the estate to whomever it of right belongs, but they are in doubt as to several questions whose answers depend on the true construction of clauses nine and fifteen of the will.

The following are the questions upon which the advice of the Supreme Court of Errors is sought:

1. Is the following language in said article ninth of said will, having due regard to the testator's intent as it may be gathered from the entire instrument, repugnant to the statute against perpetuities which was in force at the time of the testator's death on November 4th, 1882, to wit: "At the death of my daughter Mary Ann Lockwood . . . no issue her surviving, said property shall be divided equally among her brothers and sisters and their issue per stirpes"?

2. In what proportion and to whom should such parts of the estate granted by any of the provisions of said will which are judged to be inoperative (if any there be), go and of right belong?

3. Are the persons entitled to the principal of said trusts after the death of Mary Ann Lockwood to be ascertained as of the date of the testator's death?

4. Are the persons entitled to the principal of said

trusts after the death of Mary Ann Lockwood to be ascertained as of the date of the life tenant's death?

5. To whom and in what proportions or amounts is the property constituting the said trusts to be distributed by the trustees?

*Norris E. Pierson,* for the plaintiffs.

*Walter N. Maguire,* with whom, on brief, was *Charles D. Lockwood,* for the defendant children of the brothers and sisters of Mary Ann Lockwood.

*C. Milton Fessenden,* for the defendant Nancy Lockwood.

CURTIS, J. The ninth clause of the will provides that at the death of Mary Ann Lockwood, no issue surviving, the property held in trust for her shall be divided equally among her brothers and sisters and their issue *per stirpes,* excepting the issue of two deceased children.

The fifteenth clause of the will gave a portion of the rest and residue of the estate to be added to the trust for Mary Ann established by the ninth clause and hence is governed by the terms of the ninth clause.

At the death of the testator, November 4th, 1882, the statute to prevent perpetuities read as follows: "No estate in fee simple, fee tail, or any less estate, shall be given, by deed or will, to any persons but such as are, at the time of making such deed or will, in being, or to their immediate issue or descendants; and every estate, given in fee tail, shall be an absolute estate in fee simple, to the issue of the first donee in tail." Revision of 1875, page 352, § 3. The portion of this statute reading "at the time of making such deed or will" has been construed to be equivalent to

these words, "at the time of the delivery of such deed or death of the testator." *Johnson* v. *Edmond,* 65 Conn. 492, 499, 500, 33 Atl. 503.

In *Leake* v. *Watson,* 60 Conn. 498, 512, 21 Atl. 1075, we say: "By the decisions of this court, also, it has been determined that the provisions of the statute apply . . . to all gifts made by will, whether the property attempted to be given be real estate or personal property, or both together." We have repeatedly held that a gift or devise or bequest which may by possibility offend against the statute is void and of no effect. *Tingier* v. *Chamberlin,* 71 Conn. 466, 469, 72 Atl. 718.

From the terms of the statute, if we construe the word issue in clause nine, which reads in part, "in the event of her [Mary Ann's] death, no issue surviving, said property shall be divided equally among her brothers and sisters and their issue per stirpes" (except the issue of two of his deceased children), as meaning "descendants in every degree," the gift over would be invalid as contravening the statute against perpetuities. If we construe the word issue in clause nine as meaning children, the gift over would be valid.

We are therefore confronted with the question as to what construction is to be placed on the word issue in clause nine. There are general rules as to the construction of wills to be kept in mind, as: "The intention of the testator is to govern if it can be ascertained, and is conformable to law; and of course it is the intention expressed and made manifest in the words used; which words may, if necessary, be read in the light of facts and circumstances relating to the condition of the testator's family, and the like, under which they were written"; *Johnson* v. *Edmond,* 65 Conn. 492, 495, 33 Atl. 503; and "one of the fundamental rules in the construction of wills is that a

testator is always presumed to use the words in which he expresses himself according to their strict and primary acceptation, unless from the context of the will it appears that he has used them in a different sense." *Leake* v. *Watson,* 60 Conn. 498, 508, 21 Atl. 1075.

The strict primary acceptation of the word "issue" has been defined by us, when used as a word of purchase, to include descendants of every degree. *Hoadley* v. *Beardsley,* 89 Conn. 270, 93 Atl. 535. In that case, p. 277, we said: "This, however, is not its invariable meaning, and in the interpretation of wills a more restrained one, making it synonymous with 'children,' will be given to it where it appears that the testator so used it."

The defendants claim that it appears clearly in this case that the testator used the word issue as equivalent to children in clauses nine and fifteen, and that an inspection of the context of the will discloses this. As to the rule of construction to be followed in the study of the context of a will, we quote from the same case: " 'If two modes of construction are fairly open, one of which will turn a bequest into an illegal perpetuity, while by following the other it would be valid and operative, the latter mode must be preferred.' " See *Wolfe* v. *Hatheway,* 81 Conn. 181, 185, 70 Atl. 645.

The term issue is used three times in clause nine of the will. It occurs first in the clause which reads: "At the death of my daughter Mary Ann Lockwood, said property shall be by my executors divided per capita among her lawful children; and in the event of her death, no issue her surviving, said property shall be divided . . ." It is apparent that in this excerpt the testator uses issue as the equivalent of children.

The second use of the term issue in clause nine is

in the provision disposing of the property in case Mary Ann died without children surviving her. The provision is: "Said property shall be divided equally among her brothers and sisters and their issue per stirpes." The term issue is not here definitely characterized and it is necessary to ascertain the meaning of issue by ascertaining how it is used elsewhere in the clause.

The third use of issue in clause nine occurs in the same sentence when he excepts "the issue of my deceased son Edward and my deceased daughter Julia Baldwin, otherwise provided for in this will." We turn to the clause in the will providing for the issue of his deceased son Edward to ascertain whom he had in mind in using the word issue. This provision is in clause eight, which is as follows: "Eighth. I give and devise to Annie Philips the widow of my deceased son Edward Philips, and to their four youngest children, to wit: Eveline Theresa Philips, Ada R. Philips, Edward Philips and Eugene H. Philips, the house and lot situated and known as Number 137 (One hundred and thirty-seven) Allen Street in the City of New York until the said Eugene H. Philips shall attain the age of Twenty-five years or happen to die, and upon his attaining that age or death, whichever of those events shall first happen, I give and devise said house and lot to them, their heirs and assigns forever, and I give and bequeath to the said Annie Philips the sum of Two thousand Dollars and I give and bequeath to the said Eveline Theresa Philips, Ada A. Philips, Edward Philips and Eugene H. Philips the sum of Three hundred Dollars each, and I release and discharge the said Annie Philips and her children from the payment of the amounts charged against her and them in said book of private accounts at page 61."

From this clause it appears that the term issue in

clause nine when used to refer to the "issue of my deceased son Edward . . . otherwise provided for in this will," was used as the equivalent of the children of Edward specifically mentioned in clause eight in this will, where they were provided for, and the same is true as to the word issue in relation to his deceased child Julia as appears in clause five of the will, where her "children" are provided for.

These uses of the word issue as equivalent to children in clause nine indicate that the term issue in clause nine was used as the equivalent of children, because "if two modes of construction are fairly open, one of which will turn a bequest into an illegal perpetuity, while by following the other it would be valid and operative, the latter mode *must be preferred.*"

The foregoing examination of the context in order to gather the use made of the term issue in clause nine, demonstrates that it was used as the equivalent of children and therefore the provisions of clauses nine and fifteen are not repugnant to the statute against perpetuities in force at the time of the testator's death, and it is not necessary to pursue the claim made by the defendants as to the construction of the clauses in question in case we should hold that issue was not used as the equivalent of children in clause nine.

Under the clauses in question with the word issue construed as the equivalent of children, we may read clause nine as if it read, "At the death of my daughter Mary Ann Lockwood said property shall be by my executors divided per capita among her lawful children and in the event of her death no issue her surviving, said property shall be divided equally among her brothers and sisters and their children per stirpes except" the children of two deceased children of the testator.

The defendants in their brief summarize their claims . in part as follows:

1. That the word issue wherever used in paragraph nine of the will means children.

2. That the provisions of the will for gifts over upon the death of Mary Ann Lockwood, leaving no children surviving her, were valid and not against the statute of perpetuities.

3. That the trust fund created by paragraph nine, so far as it concerns personal property, should be distributed to the brothers and sisters of Mary Ann Lockwood (except that two shall take nothing), provided that if any of said brothers and sisters to whom said bequests inured died before the death of the life tenant, their respective shares should go to their personal representatives.

We think that these claims are valid. When the testator executed the will he had six children living and two children had already predeceased him, to wit: Edward and Julia, as to whose children special provision was made in the will, and they were excepted from the provisions of clause nine. When the testator died the six children still survived him. The question presents itself as to what the testator meant when he said in clause nine "said property shall be divided equally among her [Mary Ann's] brothers and sisters and their issue per stirpes." Does he mean among her brothers and sisters, but if any brother or sister predeceased me, then to his (or her) children *per stirpes?* Or does he mean that, at the testator's death, brothers and sisters of Mary Ann shall take a vested interest in the nature of a contingent remainder in competition with their own children. This construction is an unnatural and unreasonable one. Furthermore, it is a principle of law that a construction which admits children to compete with their living

parents is to be avoided, unless such was plainly the testator's intention. *Manning* v. *Manning,* 229 Mass. 527, 529, 118 N. E. 676.

This was plainly not the testator's intent in this case, and hence the construction first suggested is the one intended, to wit: that the division was to be among the brothers and sisters of Mary Ann who survive the testator, and if any of the five predecease him, then to the children *per stirpes* of such brother or sister of Mary Ann as predeceased him.

In the instant case the five brothers and sisters of Mary Ann survived the testator and hence each then took a vested interest by way of a contingent remainder; vested, in such a situation, means a remainder so far vested as to be capable of alienation and the subject of succession by inheritance. *Johnson* v. *Edmond,* 65 Conn. 492, 499, 33 Atl. 503.

This vested interest in the nature of a contingent remainder would become fully vested when Mary Ann died, no children surviving her, and if any such brother or sister predeceased Mary Ann, his or her right, under the admitted facts, would become the property of his or her estate.

The questions submitted should be answered as follows: Question one, no; question two, no part of the will is inoperative; question three, yes; question four, no; question five, One fifth part to each of the estates of Susan M. Dimon, George A. F. Philips, Charles S. Philips, Henry C. Philips and Alice P. Leaman, respectively.

In this opinion the other judges concurred.