GEORGE HENRY WARREN, TRUSTEE (WILL OF CHARLES PHELPS WILLIAMS, SR.) *v.* ELIZABETH W. DUVAL ET AL.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued May 4th—decided June 30th, 1938.

*John M. Comley,* for the plaintiff.

*Francis F. McGuire,* with whom, on the brief, was *Frank L. McGuire,* for the named defendant.

*Leonard M. Daggett,* with whom was *Stanley Daggett,* for the defendants Schermerhorn et al.

*Herbert W. Rathbun,* for the defendant Elizabeth B. Williams, executrix.

*Israel Nair,* with whom, on the brief, was *David L. Nair,* for the defendants Egan, administrator, et al.

*Lucius F. Robinson, Jr.,* for the defendants Warren.

*Walter N. Maguire,* with whom was *Raymond E. Hackett,* for the defendant Miller, executor.

MALTBIE, C. J.  The questions presented in this reservation arise under the will of Charles P. Williams who died October 28th, 1879.  He made a few bequests and devises, and then provided in the eighth paragraph that "all the rest and residue of my estate real and personal" should be divided into a certain number of shares of equal value, and gave these shares to various persons and corporations.  The controversy before us concerns the disposition of certain of these shares which were devised and bequeathed in the seventeenth clause of the will.  This clause gave one hundred and twenty-five shares to a trustee for each of the testator's children by his wife Georgia, the income to be paid to them during their lives and "upon the decease of either of them [to] pay over to the lawful issue of such deceased and assign to them the one hundred and twenty-five shares held in trust for such deceased as aforesaid and the assets making up the same, to be theirs forever, but if there be no such issue surviving them to my other and surviving children by my said wife Georgia and the surviving issue of any who may be dead."  The testator's children referred to in this clause were Georgia Williams Warren and Charles Phelps Williams, Jr.  Both have died, the latter in 1935.  He had two children, Georgia Williams Miller and Elizabeth Duval.  Mrs. Miller died before her father, leaving two children.  The first question we shall discuss concerns the right of the descendants of Charles Phelps Williams, Jr., to take the remainder interest in the shares of which he had the life use.

At the time the testator died there was in effect a statute which provided as follows: "No estate in fee

simple, fee tail, or any less estate, shall be given, by deed or will, to any persons but such as are, at the time of making such deed or will, in being, or to their immediate issue or descendants; and every estate, given in fee tail, shall be an absolute estate in fee simple, to the issue of the first donee in tail." Revision of 1875, p. 352, § 3. By repeated decisions the words "immediate issue" in this statute have been construed to mean children and not more remote descendants and the provisions of the statute have been held to apply to gifts of all types of property, real, personal or both. *Leake* v. *Watson,* 60 Conn. 498, 509, 512, 21 Atl. 1075; *Bartlett* v. *Sears,* 81 Conn. 34, 41, 70 Atl. 33; *Daskam* v. *Lockwood,* 103 Conn. 54, 59, 130 Atl. 92. "The word 'issue' when used as a word of purchase and unaffected by any circumstances showing a different intent means descendants of every degree." *Dolbeare* v. *Dolbeare,* 124 Conn. 286, 289, 199 Atl. 555. It is not the equivalent of "immediate issue" within the meaning of the statute. *Bartlett* v. *Sears,* supra.

We have at times construed the word issue to mean children and one consideration which has weighed with us in so doing is the fact that thereby a construction which would offend against the rule against perpetuities and avoid partial intestacy can be obviated. *Mitchell* v. *Mitchell,* 73 Conn. 303, 308, 47 Atl. 325; *Russell* v. *Hartley,* 83 Conn. 654, 664, 78 Atl. 320; *Hoadley* v. *Beardsley,* 89 Conn. 270, 278, 93 Atl. 535; *Middletown Trust Co.* v. *Gaffey,* 96 Conn. 61, 66, 112 Atl. 689; *Daskam* v. *Lockwood,* 103 Conn. 54, 60, 130 Atl. 92; *Ansonia National Bank* v. *Kunkel,* 105 Conn. 744, 750, 136 Atl. 588. Thereby the intent of the testator will be effectuated, because it is not to be presumed that he would make a disposition of his property in violation of law. *Woodruff* v. *Marsh,* 63 Conn.

125, 136, 26 Atl. 846. The rule is that, "If two modes of construction are fairly open, one of which would turn a bequest into an illegal perpetuity, while by following the other it would be valid and operative, the latter mode must be preferred." *Wolfe* v. *Hatheway,* 81 Conn. 181, 185, 70 Atl. 645. But in no case have we given the word "issue" other than its primary meaning merely to avoid the effect of the statute, in the absence of language which, read in the light of the surrounding circumstances, disclosed an intent on the part of the testator to use the word in another sense. *Bartlett* v. *Sears,* 81 Conn. 34, 41, 70 Atl. 33; *Perry* v. *Bulkley,* 82 Conn. 158, 165, 72 Atl. 1014; *Pease* v. *Cornell,* 84 Conn. 391, 395, 80 Atl. 86; *Comstock* v. *Bridgeport Trust Co.,* 106 Conn. 514, 517, 138 Atl. 440. As bearing upon the intention of the testator in the will before us, it should be noted that at the time it was made the meaning of the existing Statute against Perpetuities was not generally understood to be that given to it in 1891 when *Leake* v. *Watson,* supra, was decided; and a gift to the issue of one who was alive at the death of the testator was by no means commonly regarded as in violation of the statute. See *Beardsley* v. *Johnson,* 105 Conn. 98, 112, 134 Atl. 530.

The will before us is on the whole very well drawn, and rather unusual in its adherence to technical accuracy. Not only in the clause we are considering but in others the testator used the words "issue" and "children" in close juxtaposition under circumstances where had he meant children by the former word it would have been simple and natural for him to have used it. The various clauses of the will show a studied use of the word children where they were intended and of the word issue when more remote descendants were to be included. It is true that in the eighteenth paragraph of the will he made a provision for his children

by his wife Georgia and added that should either of them die before reaching the age of twenty-one his or her "issue" surviving should be entitled to the property; and as a child under twenty-one could not have grandchildren only children could have been included in this provision. From this it is argued that, as issue here must necessarily be restricted to children, so the same word should be given that meaning in the clause we are considering. But if this were so, issue must be taken to mean "children" throughout the will and we would have several provisions where the two words would then be used in the same sentence with the same meaning, which would be very strange. The use of the word "issue" in connection with the testator's grandchildren in the eighteenth paragraph is rather to be attributed to a momentary oversight than to an intent to give to it the meaning of children. We find no warrant in the will for construing the word "issue" to mean children.

As some of the issue of the testator's son might not be children, the gift to them would be invalid. *Wheeler* v. *Fellowes,* 52 Conn. 238, 244; *Hewitt* v. *New York, N. H. & H. R. Co.,* 70 Conn. 637, 642, 40 Atl. 605; *White* v. *Allen,* 76 Conn. 185, 189, 65 Atl. 519; *Hartford Trust Co.* v. *Wolcott,* 85 Conn. 134, 137, 81 Atl. 1057. The principle applied under the common-law rule against perpetuities that, if a gift vests in a class within the period allowed, it does not offend against the rule even though it may open to let in after-born children who might not be able to take upon a direct gift to them, is not applicable under the statute. "Our statute is imperative, that the estate must be given to parties in being when the will was made or to the immediate issue of parties then in being. If by possibility the estate might be carried by the terms of the will to parties not then in being and who are not the imme-

diate issue of parties then in being, the will in this respect is void." *Wheeler* v. *Fellowes*, supra. Nor is the situation before us like that considered in *Bartlett* v. *Sears*, 81 Conn. 34, 44, 70 Atl. 33, and *Farnam* v. *Farnam*, 83 Conn. 369, 384, 77 Atl. 70, where we discussed a gift made to persons who might take under the statute, with a further limitation over upon the death of any one of them, to persons not within the class of those permitted by the statute, and we concluded that, the latter gift being void, the property would vest in those to whom it was first given, and the interest of one who died would pass to those entitled to inherit his estate.

Counsel for the children of a deceased daughter of the life tenant advances an interesting argument, to this effect: The Connecticut Statute against Perpetuities was the enactment of a previously existing rule, a part of the common law of Connecticut, that a grant or devise to the child of an unborn child was void; this rule concerned solely the devolution of title of real estate and the statute was extended to include personal property only by judicial decision; *Leake* v. *Watson*, supra, which finally determined the construction of the statute, was decided in June, 1891, but by Chapter 249 of the Public Acts of 1895, the portion of the statute having to do with perpetuities was repealed, and thereby the interpretation of the statute made in that case was repudiated as not consonant with the public policy of the State; and in view of that fact the statute should not now be applied to the gift of personal property before us, to the defeat of the manifest intention of the testator. That the statute did, in part at least, enact a previously existing rule of our common law hardly admits of doubt and that it was immediately directed at grants and devises

of land may be conceded. Whether the rule of the common law which the statute embodied was that which counsel suggests or another is not material.[1]

[1] Note.—The existence of a rule operating independently of the general rule against perpetuities, that an attempted grant or devise to the child of an unborn child is void, is disputed by at least one eminent authority. Gray, Perpetuities (3d Ed.) pp. 164, 643. But even if it be admitted that there was such a rule generally accepted in 1784 when our Statute against Perpetuities was adopted, it by no means follows that the statute was intended to enact it. That the statute was based upon a previously existing common-law rule may be granted. 1 Swift's Digest, 79. Language which corresponds to the rule suggested is found in some cases. *Allyn* v. *Mather,* 9 Conn. 114, 127; *Tappan's Appeal,* 52 Conn. 412, 421; *Leake* v. *Watson,* 60 Conn. 498, 510, 21 Atl. 1075. However, the cases as a whole and particularly the earlier ones indicate that the previously existing common-law rule was not that an attempted grant or devise to the child of an unborn child was invalid but that an attempted grant or devise in fee tail was good as such in the first donee or grantee but became a fee simple in his issue. *Welles* v. *Olcott,* Kirby 118 (decided by a court upon which sat the two men who originally prepared the Revision of 1784, Richard Law as Chief Judge and Roger Sherman); *Hamilton* v. *Hempsted,* 3 Day 332, 339; *Allyn* v. *Mather,* supra, 129; *St. John* v. *Dann,* 66 Conn. 401, 407, 34 Atl. 110. This view finds support in the form in which the statute was originally enacted.

After a fire in the state capitol in 1910, the State Librarian, Mr. George S. Godard, discovered in the attic the manuscript of the Revision of 1784. This volume bears the indorsements of the secretary of the state in behalf of the "Upper House" and of the clerk of the "Lower House." Attached to it is a letter from the Hon. Richard Law dated at New London and addressed to the secretary of the state in which he states that he is returning the manuscript which had been entrusted to him and that printed copies would soon be available. In this letter Judge Law states that it had been almost as much work to "revise the revisal" as it was to prepare the original, "there being so many different votes thereon which made it very difficult to bring it right." As the Revision of 1784 was printed by Timothy Greene at New London it is obvious that the manuscript was entrusted to Judge Law that he might prepare it for printing. In the printed edition the statute which we are considering was the third paragraph of a law entitled "An act relating to the Age, Ability and Capacity of Persons"; and it began with the words: "And in order to avoid Perpetuities it is hereby provided, That no estate," etc., as in the statute quoted in the

The statute was, at first without discussion and apparently as matter of course, applied to personal as well as real property; *Rand* v. *Butler,* 48 Conn. 293; *Alfred* v. *Marks,* 49 Conn. 473; *Anthony* v. *Anthony,* 55 Conn. 256, 11 Atl. 45; and this became its settled construction; *Leake* v. *Watson,* supra, 512; *Daskam* v. *Lockwood,* 103 Conn. 54, 59, 130 Atl. 92. No doubt the reason was that the statute was taken to establish a public policy for the prevention of perpetuities as applicable in the case of one type of property as the other; indeed, had it not been so regarded, we would have had one rule applicable to grants or devises of real property and another as to bequests or transfers of personal property, with difficult questions presented where a gift or transfer included both. The same considerations with reference to perpetuities largely apply in the case of both types of property. Gray, Perpetuities (3d Ed.) § 319. To adopt the view now presented would require us to hold that during the more than one hundred years that the statute stood gifts or transfers of personal property were subject to one rule and grants or devises of real property to another, and this in the face of the decisions we have cited to the effect that the rule of the statute applied to both, the last of which was decided after the statute was repealed. It may well be that few if any more cases will arise under the statute; but we cannot find in its repeal a sufficient reason now to hold that

---

opinion from the Revision of 1875. In the manuscript the provision in question followed one proviso and is in the following language: "provided also that no estate in fee tail or otherwise shall be given or limited by deed or will to any person not in being at the time of making such deed or will, except to the immediate descendants or descendant of some person or persons then in being, but any further limitation shall be void, and the last donee in tail that may take by this act shall hold in fee simple."

W. M. M.

the cases we have cited were mistakenly decided and in effect to overrule them.

The gift of the remainder interest in the one hundred and twenty-five shares in question to the lawful issue of the life tenant is void. It becomes necessary, therefore, to determine what disposition should be made of them. The concluding clause of the seventeenth paragraph, providing that if either child died without surviving issue, the shares held in trust for him or her should go to the testator's surviving children by his wife Georgia and the surviving issue of any who may have died is to be disregarded, because the condition that the child dying should not leave surviving issue did not occur. *Mahoney* v. *Mahoney*, 98 Conn. 525, 533, 120 Atl. 342; *Trowbridge* v. *Townsend*, 112 Conn. 104, 110, 151 Atl. 345.

The eighteenth paragraph of the will provides as follows: "All the other shares and all the rest and residue of my estate real and personal not otherwise disposed of in this will, I do give, devise and bequeath to my children by my said wife Georgia, to be theirs forever, and to be distributed equally among them by my executor W. J. H. Pollard according to his own judgment but in regard to all my estate principal and interest coming to each and every of my children by my wife Georgia under this or any section of my will except the seventeenth and the interest and income of the trust estates in that section also, I direct that the same" be held in trust, an allowance from the income to be made for the support of the children and on the arrival of each at the age of twenty-one years the fund to which he or she is entitled to be paid to him or her, with a further provision that "should either of my said children by said Georgia die before reaching the age of twenty-one years, his or her issue surviving shall be entitled to the immediate

transfer of the trust estate of the deceased child under this section of my will" and a substitutionary gift in the event that there were no such surviving issue. The nineteenth paragraph, so far as material to our inquiry, provides: "In the division of the residue of my estate directed in the eighth section of this will into nineteen hundred forty-five shares I do not intend that particular assets shall necessarily be set to each and every of said shares,—the appropriation of particular assets to shares need be done only for the setting off to each gift the property which shall pertain thereto, while the number of shares I give in each case will show how many nineteen hundred forty-fifth parts of the residuum is included in each gift."

Despite the references to "rest and residue" in the eighth paragraph and to the "residue" and "residuum" in the nineteenth paragraph, it is clear that it was the eighteenth paragraph in which the testator expressed his intent to bring within the scope of the will all his property of every kind and description not otherwise disposed of, and this was the real residuary provision. *Phelps* v. *Robbins,* 40 Conn. 250, 266; *Raughtigan* v. *Norwich Nickel & Brass Co.,* 86 Conn. 281, 285, 85 Atl. 517. The fund representing the one hundred and twenty-five shares consists entirely of personal property. The remainder interest in it, the attempted gift of which was invalid, falls into this residue. *Stanley* v. *Stanley,* 108 Conn. 100, 109, 142 Atl. 851; *Bartram* v. *Powell,* 88 Conn. 86, 90, 89 Atl. 885; *Hartford Trust Co.* v. *Wolcott,* 85 Conn. 134, 139, 81 Atl. 1057. Certain of the defendants point to the exception of the shares given in the seventeenth paragraph from the provision in the eighteenth paragraph for holding the property in trust until each of the children should reach the age of twenty-one, as indicating an intent not to include these shares in the scope of the latter

paragraph; but the purpose of the exception is apparent; the eighteenth paragraph provided generally for the holding in trust of property given to the children until each became twenty-one and that then the principal should be paid to him or her; but the shares given in the seventeenth clause were to be held in trust during the entire lives of the children; and it was necessary in order to carry out the testamentary scheme to except the principal gift from the operation of the eighteenth paragraph. There is nothing in the exception which militates against the remainder interest in the one hundred and twenty-five shares becoming part of the residue in the eighteenth paragraph.

The interests given in the eighteenth paragraph vested in the children of the testator by his wife Georgia, that is, in Georgia Williams Warren and Charles P. Williams, Jr., at once upon the death of the testator. *Bartram* v. *Powell,* 88 Conn. 86, 92, 89 Atl. 885; *Colonial Trust Co.* v. *Brown,* 105 Conn. 261, 271, 135 Atl. 555. As they both lived beyond the age of twenty-one, the substitutionary gift should they die before reaching that age never became effective and its invalidity cannot effect the validity of the prior gift to them. *Brooks Bank & Trust Co.* v. *Beers,* 120 Conn. 477, 481, 181 Atl. 391; *Shepard* v. *Union & New Haven Trust Co.,* 106 Conn. 627, 636, 138 Atl. 809; *Sumner* v. *Westcott,* 86 Conn. 217, 222, 84 Atl. 921; *Eaton* v. *Eaton,* 88 Conn. 269, 276, 91 Atl. 191; *Thresher's Appeal,* 74 Conn. 40, 45, 49 Atl. 861; *Johnson* v. *Webber,* 65 Conn. 501, 514, 33 Atl. 506. It follows that at the death of the testator his children by his wife Georgia each acquired a vested right to an equal one-half in the remainder interest in the one hundred and twenty-five shares in question. As both have died, the property should be distributed one-half to the estate of each.

To the first question, asking whether the gift in the seventeenth paragraph of the remainder interest in the fund in question is void as contrary to the Statute against Perpetuities in force at the death of the testator, we answer "Yes." To the second question, asking whether in that event the interest in the fund passes under the eighteenth paragraph of the will, we answer "Yes." The remaining questions do not require an answer.

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.