SECOND NATIONAL BANK OF NEW HAVEN, TRUSTEE (ESTATE OF WINSTON J. TROWBRIDGE, SR.) *v.* GEORGE H. TOWNSEND ET AL.

MALTBIE, C. J., BROWN, JENNINGS, DICKENSON and DALY, Js.

Argued January 4—decided March 10, 1944.

*James E. Wheeler* appeared for the plaintiff.

*Crenna Sellers* appeared for the defendants George H. Townsend et al.

*Leonard M. Daggett* and *Richard Hooker, Jr.,* with whom, on the brief, was *Stanley Daggett,* for the defendants Stanley Daggett, Administrator, et al.

*Frederick H. Wiggin* and *Catherine J. Tilson,* for the defendant Huntington T. Day, Administrator.

*Francis F. McGuire,* for the defendant The Second National Bank of New Haven, Administrator.

MALTBIE, C. J. Winston J. Trowbridge, Sr., died November 6, 1864, a resident of New Haven. In his will he gave the residue of his estate to trustees to be held for the equal benefit of his six children, with further provisions that the income was to be used for their care and support, that as each son reached the age of twenty-five he was to receive his share of the principal, and that the share of each of his daughters was to be held in trust for her during her life. The will then proceeded: "At the death of each daughter and of each son of whose share any part may remain in the hands of said Trustees, the said Trustees shall pay over and deliver the share of each deceased son or daughter to their respective children if either have deceased leaving children to be equally divided between them and I give and devise the same accordingly, but if such deceased son or daughter leave no children then I give and devise the share of the one so dying without children to his or her surviving brothers and sisters & the issue of any deceased brother or sister, the issue to take the deceased parents share and such share shall be retained by said Trustee and held in trust or paid over into the hands of such surviving brothers and sisters and their issue according as their respective shares are then held, but if any of my sons so dying shall leave a widow and no children surviving then said Trustees shall pay to such widow the income of one-third part of such trust fund as may be then held for my said son during her life unless she marry again in which case such payment shall cease, and the remainder of such

sons share (together with said third part after death or marriage of said widow) shall be paid over to his brothers and sisters and their issue as hereinbefore provided."

The testator left surviving him his widow and six children, four daughters and two sons, all minors. The widow and all the children have since died. Four of the children married and had children; one or more of the children of each are now living, but others of these children have died, leaving children. One son died, unmarried, in 1930. The particular questions now presented to us arise because of the recent death of the last surviving child of the testator, a daughter, Mrs. Reynolds, who married but has left no children. The first question we are called upon to answer is as to the construction to be given to the word "issue" in the provision quoted from the will, that is, is it to be given its primary meaning of descendants of every degree or to be construed as meaning children?

This will was before us on a previous occasion as the result of the death of one of the testator's daughters leaving a son and a grandson, the son of a daughter who had predeceased her mother. We held that the word "children" in the portion of the will we have quoted did not include grandchildren, but that as soon as a child was born to the testator's daughter the gift over to her children vested as a class gift and the subsequent death of one of them would not divest his or her interest but it would descend as a part of his or her estate. *Trowbridge* v. *Townsend*, 112 Conn. 104, 151 Atl. 345. With that decision before us, we need go no farther than the recent cases of *Warren* v. *Duval*, 124 Conn. 448, 200 Atl. 804, and *Dolbeare* v. *Dolbeare*, 124 Conn. 286, 199 Atl. 555, to find a solution of the problem now presented. The *Warren* case, like the one before us, presented the question whether the word

"issue" was to be given its primary meaning, descendants of every degree, with the result that the gift in question would be void under the Statute against Perpetuities in effect when the testator died, but since repealed, or was to be construed to mean children. We gave to it its primary meaning, thus invalidating the gift. In the opinion, we said (p. 452) that taking into consideration the fact that thereby a construction which would offend the Statute against Perpetuities might be avoided, we have at times construed the word "issue" to mean children, but we have done this only where the will, read in the light of surrounding circumstances, gave some indication of a use of the word to express an intent at variance with its primary meaning; that the basis for considering the fact that to give the word that meaning would result in a violation of the statute is the presumption that a testator would not intend to make an invalid provision; but that the weight to be given that consideration was affected by the fact that previous to the decision, in 1891, of *Leake* v. *Watson,* 60 Conn. 498, 21 Atl. 1075, a gift expressed to be to a person's issue, even when that word was given its primary meaning, was not commonly regarded as necessarily in violation of the statute. In the *Dolbeare* case, the will was that of a testator who died after the repeal of the statute, and there was no question of the invalidity of a gift to "issue." The testator gave his estate to his wife for life and at her death to his brother and sister, but provided that, if neither were living when the widow died, "the issue, then living, of my said sister, shall take the share to which their mother would have been entitled had she been living." The brother and sister both predeceased the widow but the sister left surviving her one son and children of two other sons who had died. We refused to recognize a definite rule of interpreta-

tion requiring that the word "issue" when used in correlation with the word "parent" or the like should be interpreted to mean children, but held that the conjunction of the two words is merely a circumstance to be considered. The effect of construing the word "issue" to mean "children" in that case would have been to give the entire residue of the estate to the surviving son of the testator's sister to the exclusion of the children of her two deceased sons; we held that we could not impute such an intent to the testator and that "issue" as used in the will must be given its primary meaning.

In the will before us, there is, it must be recognized, a consistent use of the two words "children" and "issue," in that the first occurs whenever the testator is referring to descendants of a son or daughter to whom he has made the primary gift and the second, whenever he is referring to the descendants of sons or daughters whose interests accrue only on the death of a brother or sister without "children." As was pointed out in the *Dolbeare* case, we cannot give any controlling weight to the use of the words "the issue to take the deceased parents share." Nor are we impressed with the argument advanced by those who contend for the construction of the word as meaning "children," based upon the provision that the share accruing to a child of the testator by reason of the death of a brother or sister without children is to be "retained by said Trustees and held in trust or paid over into the hands of such surviving brothers and sisters and their issue according as their respective shares are then held"; for, while the language is somewhat confused, apparently because of overcondensation, the obvious meaning is that if a daughter succeeded to the interest given to a brother or sister or a son so succeeded before he became entitled to receive the share of the principal

given to him in the first instance, the interest to which he or she succeeded under this provision was to be held in trust for him or her; but if a son so succeeded after he became entitled to receive his share free of the trust, that interest was to be paid to him; this would be true as regards the "issue" of a brother or sister who succeeded to such an interest; and it is unduly forcing the language of this portion of the will to attempt to read more into it.

Granting the force of these considerations and proceeding upon the basis that we must find in this will some indication of an intent to use the word "issue" with the meaning of "children" before we can so construe it, even if otherwise the gift will fall within the Statute against Perpetuities, the conclusion that the testator used the word "issue" as meaning descendants of every degree still does not ring true. The situation before us is almost the converse of that in the *Dolbeare* case. There the controlling consideration which led us to construe "issue" as not meaning "children" was (p. 292) that the effect would be to vest the residue of the estate in the surviving son of the first taker, to the exclusion of the children of her other sons, and this would be to impute to the testator "a purpose to disinherit one branch of descent to the enrichment of another." In the will before us, the word "children" has been construed by our previous opinion to mean only descendants in the first degree. If we construe "issue" as meaning descendants of every degree, we would have a situation where, on the death of one of the testator's children leaving no living child, but grandchildren, they could not take under the will, but the share of that child of the testator would, as far as the express terms of the will provide, pass to the other children of the testator, and, if any one of them had deceased, leaving grandchildren but no children, to those

grandchildren. To construe the will so as to produce such a result would be to do what in the *Dolbeare* case we said we would not do, that is, impute to the testator a use of the word "issue" with such a meaning that it would disinherit one branch of descent to the enrichment of another. It is highly improbable that the testator in providing for a succession to the share of the estate given to one of his children in the line of immediate descent from that child would intend to cut off his or her grandchildren, but, in the event that one of his children died without children, to provide for the descent of an interest through brothers and sisters to their grandchildren. We have not overlooked the fact that by the decision in *Trowbridge* v. *Townsend,* supra, this situation cannot develop, because, as the result of the application of certain principles of law, the children of each of the testator's children acquired at birth a vested interest which would pass as a part of his or her estate; but in the first place that result follows from circumstances apart from the intention expressed by the testator in his will and it is with that intention that we are concerned, and in the second place it is not likely that the testator had in mind the somewhat unusual principles of law applied in the *Trowbridge* case. *Wildman's Appeal,* 111 Conn. 683, 687, 151 Atl. 265; and see *Boardman* v. *Mansfield,* 79 Conn. 634, 638, 66 Atl. 169.

Certain of the considerations presented by the will before us were involved in the interpretation of the will in *Warren* v. *Duval,* supra, as appears at page 453 of our opinion in that case. In that case, as in this, the two words "children" and "issue" were consistently used; there, as here, the two words were in close juxtaposition; and there the word "issue" was in one instance clearly used with the meaning of "children," owing, as we held (p. 454), to a "momentary over-

sight." But there was not present in that case, as there is in this, a situation where to give the words "children" and "issue" their primary meaning would be to attribute to the testator an intent to make invidious distinctions for which no reasonable explanation appears. It is more consonant with the probable intent of the testator to hold that he made no distinction between the meaning of the words "issue" and "children," but that his use of the two to convey the same idea was purely fortuitous. We therefore conclude that the word "issue" is to be construed as meaning "children." The gifts to "issue" would not then violate the Statute against Perpetuities in effect when the testator died. General Statutes, Rev. 1866, p. 536; *Daskam* v. *Lockwood*, 103 Conn. 54, 59, 130 Atl. 92.

As all of Mrs. Reynolds' brothers and sisters predeceased her, living children of four of them are entitled to an interest in her share of the estate. But certain of the children of her brothers and sisters had died, and it is necessary to determine whether their estates may succeed to their interests. In *Bristol* v. *Atwater*, 50 Conn. 402, we had before us the will of a man who was a citizen of New Haven, as was the testator, and who died in 1866, only two years after the testator. The terms of that will are, with the exception of the names used, almost the same as in the will before us; indeed the similarity suggests that both were written by the same scrivener. The life tenant died, leaving no children; there survived a brother named Charles, a sister and certain children and a grandchild of another brother, and of a sister who had died; Charles became bankrupt before the death of the life tenant and the question was whether he had such an interest in the estate as would pass to his trustee in bankruptcy. It was held that he did not, because, the opinion states (p. 407), until the

death of the life tenant "it was altogether uncertain where the contingent interest would be carried by the will"; and the opinion (p. 409) proceeds to distinguish the situation which would have been presented had the gift over been "to my other children," on this ground: "In that case the persons to take would be certain, and the event only uncertain. But here there is uncertainty both as to the persons to take and the event to happen." The case of *Bristol* v. *Atwater* is distinguished on the basis so stated in *Beckley* v. *Leffingwell*, 57 Conn. 163, 165, 17 Atl. 766, and *Carpenter* v. *Perkins*, 83 Conn. 11, 18, 74 Atl. 1062; and see *Ingersoll* v. *Ingersoll*, 77 Conn. 408, 410, 59 Conn. 413. There has been, however, a growing tendency to recognize the transferability of all kinds of future interests, to the extent that the transferee will take the right subject to the conditions of defeasibility upon which the transferor held it. Restatement, 2 Property, § 162. Simes very aptly remarks: "It is sometimes said that future interests are descendible and devisable only if the contingency is as to the event and not as to the person who is to take. Generally that is true if the future interest remains in the hands of the original owner; for, if the person is unascertained at the time of his death, it is difficult to conceive of a contingency which would be resolved in his favor after his death. Hence, if it is true that a future interest which is contingent as to the person is not transmissible by descent or devise, it is only because the death of the person before the happening of the contingency necessarily resolves it against him." 3 Simes, Future Interests, p. 176. It may well be doubted whether *Bristol v. Atwater*, supra, is still controlling. *Allen* v. *Almy*, 87 Conn. 517, 523, 89 Atl. 205; *Bartram* v. *Powell*, 88 Conn. 86, 91, 89 Atl. 885. At least this is true: if, before the happening of the contingency, the

uncertainty as to the person or persons who may succeed to the interest is resolved, the estate is thereafter alienable and transmissible. *Carpenter* v. *Perkins,* 83 Conn. 11, 16, 74 Atl. 1062; *Daskam* v. *Lockwood,* 103 Conn. 54, 64, 130 Atl. 92. This would be only to apply a principle analogous to the rule that where a contingency which might defeat an interest can no longer happen the estate becomes indefeasibly vested. *Greenwich Trust Co.* v. *Tyson,* 129 Conn. 211, 225, 27 Atl. (2d) 166.

As Mrs. Reynolds' brothers and sisters died, the children of each succeeded to the interest their parent had, and the uncertainty whether the brother or sister or his or her children would take on Mrs. Reynolds' death without children was resolved. From that time on, the children of a deceased brother or sister were vested as a class with an estate which was transferable and transmissible. *Austin* v. *Bristol,* 40 Conn. 120; *Perry* v. *Bulkley,* 82 Conn. 158, 168, 72 Atl. 1014; *Carpenter* v. *Perkins,* supra; *Allen* v. *Almy,* supra; *Mahoney* v. *Mahoney,* 98 Conn. 525, 534, 120 Atl. 342; *Trowbridge* v. *Townsend,* supra, 113. Under the provision making gifts to the "surviving brothers and sisters & the issue of any deceased brother or sister," the interests of the legatees were contingent upon their surviving the daughter who had the life use. *Clark* v. *Hartford-Connecticut Trust Co.,* 127 Conn. 101, 14 Atl. (2d) 743. This condition would be met by the survival, in one alternative, of a brother or sister, and, in the other, of a child or children of a deceased brother or sister. But where a brother or sister had died and the substitutionary gift to his or her children had come into effect, there is nothing to indicate that, as between the children, the testator intended that each must survive his or her parent or the deceased

brother or sister. As in this case one or more of the children of each deceased brother and sister survived Mrs. Reynolds, the gift to the class took effect, and the fact that one of them died before her would not defeat his or her interest but it would pass as a part of his or her estate. *State Bank & Trust Co.* v. *Nolan,* 103 Conn. 308, 329, 130 Atl. 483; *Wallace* v. *Wallace,* 103 Conn. 122, 135, 136, 130 Atl. 116; *Trowbridge* v. *Townsend,* supra, 113. It follows that the share in the estate the income of which Mrs. Reynolds enjoyed is to be divided per stirpes among such of the children of her brothers and sisters as are living and the representatives of the estates of children who have died.

The questions stated in the reservation are rather general in terms and we shall confine our answers to the situation presented by the death of Mrs. Reynolds without children, the death of four of her brothers and sisters before her leaving children, and the survival at Mrs. Reynolds' death of one or more of the children of each of these brothers and sisters, but the death of certain of their children before her.

To question B, asking as to the meaning to be given the word "issue," we answer that it is to be construed to mean "children." To question C, asking whether the children of deceased brothers and sisters of Mrs. Reynolds acquired an estate alienable and transmissible by will or descent, we answer that each of the children of Mrs. Reynolds' deceased brothers and sisters acquired an estate which, if they died before she did, passed by will or descent to the representatives of his or her estate. To question A, we answer that the share of the estate from which Mrs. Reynolds received the income is to be distributed per stirpes among the children of her deceased brothers and sisters and the representatives of the estates of such children who

died before she did. Our answer to question B makes it unnecessary to answer question D.

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.