ROBERT E. CHAPMAN ET AL. *v.* TOWN OF GROTON

SUPERIOR COURT      NEW LONDON COUNTY      FILE No. 22497

ROBERT E. CHAPMAN ET AL. *v.* EMILY A. BURROWS
ET AL.

SUPERIOR COURT      NEW LONDON COUNTY      FILE No. 22737

Memorandum filed November 23, 1956.

*Washton & Vogt,* of New London, for the plaintiff in both cases.

*Waller, Smith & Palmer,* of New London, for the defendant in No. 22497.

*Belton A. Copp,* of New London, for the defendant in No. 22737.

MURPHY, J. These are two cases which were tried together. The defendants claim to be the owners of adjoining properties which were originally one tract. While the plaintiffs seek to quiet title to the lands, the determination must be based upon the construction of a will executed in 1884. As the controlling facts in both cases are the same, one memorandum of decision will suffice.

Robert Chapman of Groton made his will in 1884. It was written in longhand by the notary public who administered the oath to the subscribing witnesses on the proof of the will out of court. Close examination of the will shows peculiarities of punctuation and capitalization that were either characteristic of the times or personal to the scrivener.

Mr. Chapman died March 11, 1889. His wife was given the life use of all of his property. She died in 1897. Upon her death, certain interests in specific properties passed to named children and grandchildren.

Under item 5 of the will, a son, Walter E. Chapman, was given the life use of fifty-three acres of land in Groton. In the second paragraph of this item, he was bequeathed the income from a trust of $1400 of which his brother George was trustee. In the third paragraph the testator provided that the trustee could use all or any part of the legacy in

building a house for Walter and at his death "said estate" should go to Walter's legal heirs but if he died leaving no child or children then to the testator's children and their legal representatives.[1]

The plaintiffs are the surviving children and grandchild of Walter, who died in California in 1940. They claim that the words "said estate" in the third paragraph refer to the fifty-three acres as well as to the legacy, while the defendants maintain that they apply only to the legacy and that the disposition of the remainder interest in the fifty-three acres was controlled by the residuary clause of the will.

The intended meaning of the words "said estate" must be ascertained from an examination of the entire will. *Williams* v. *Houck*, 143 Conn. 433, 441. The testator made outright devises of real estate to two sons, John and George, and also provided outright legacies for them. However, for his other two sons, Charles and Walter, he only gave the life use of the parcels of realty described in items 4 and 5 of the will. A trust fund of $2700 was set up for Charles from which he was to receive the income. At his death, the bequest (the trust fund) was to go to his legal heirs and if none, then to the testator's children and their legal representatives.

---

[1] "Item. 5. I give and bequeath to my son Walter E. Chapman the use and improvement of the following real estate, viz., [description, 55 acres].

"I also give and bequeath to said Walter E. Chapman in trust, the sum of Fourteen Hundred dollars in six months after the decease of my wife or the probate of this will, and I hereby appoint my son George H. Chapman Trustee to manage said bequest, and pay the said legatee the income and interest thereof semi-annually. Said trustee to place said bequest in the savings bank or banks.

"If at any time said Walter should wish, and said trustee deem it expedient, he may expend such part, or the whole of said legacy in building a house for said Walter, and at the decease of said Walter, said estate to go to his legal heirs. But in case he should die leaving no child or children, then the same to be equally divided among my children and their legal representatives."

Undoubtedly, the testator felt that Walter's trust fund might be invested in real estate at the date of Walter's death and it would be inappropriate to refer to such an investment as a bequest, as he had done in the case of Charles where no provision was made for use of the trust fund other than to draw interest in a savings bank. "Said" is a word of reference to something previously mentioned. *Trumbull Electric Mfg. Co.* v. *John Cooke Co.,* 130 Conn. 12, 15. The only property that is mentioned in the third paragraph is the legacy which could be used to build a house for Walter. By a rule of syntax, the word "said" has reference to its nearest antecedent. *Hershatter* v. *Colonial Trust Co.,* 136 Conn. 588, 592. It is my conclusion that the testator in using the words "said estate" in the third paragraph of item 5 referred only to the trust fund, whether it was in a savings bank drawing interest or was invested in a house for Walter. They did not refer to the fifty-three acres of which Walter had life use.

As no specific disposition of the remainder interest in the fifty-three acres, after the life estates in the widow and Walter, was made in the will, they became part of the residue of the estate.[2] It becomes necessary to determine whether the residuary clause is void because of the then existing Statute against Perpetuities. It read: "No estate in fee simple, free tail, or any less estate, shall be given by deed or will, to any persons but such as are at the time of the delivery of such deed, or death of the testator, in being, or to their immediate issue or descendants; and every estate, given in fee tail, shall be an absolute estate in fee simple to the issue of the first donee in tail." General Statutes, Rev. 1888, § 2952.

[2] "After the decease of my wife, & at the probate of this will all the residue and remainder of my estate not disposed of herein, I give and bequeath to be equally divided among my aforesaid children and their legal representatives."

By repeated decisions of the Supreme Court the words "immediate issue" have been construed to mean children and not more remote descendants. *Warren* v. *Duval,* 124 Conn. 448, 452.

We pass then to a determination of the meaning of the words "legal representatives" as used in the residuary clause. *Brooks Bank & Trust Co.* v. *Beers,* 120 Conn. 477, 479. The term appears in three other items in the will. In items 4, 5 and 9 it provides for the equal division "among my children and their legal representatives" of the trusts for Charles, Walter and Lottie Spicer, upon their deaths, if Charles should die without heirs and Walter and Lottie should be childless. He used the words "heirs" and "children" interchangeably. It can readily be seen that, as used in these items, the term "legal representatives" could not mean children or issue. Words occurring more than once in a will shall be presumed to be used always in the same sense, unless a contrary intention appear by the context, or unless the words be applied to a different subject. *Beardsley* v. *Johnson,* 105 Conn. 98, 109.

"Legal representatives" has also been construed to mean those entitled to take by inheritance as well as the representatives of the estate of a deceased person. *Brooks Bank & Trust Co.* v. *Beers,* supra, 480. If two modes of construction are fairly open, one of which would turn a bequest into an illegal perpetuity, while by following the other it would be valid and operative, the latter mode must be preferred. *Warren* v. *Duval,* supra, 453; *Wolfe* v. *Hatheway,* 81 Conn. 181, 185. From consideration of the entire will, I conclude that the words "legal representatives" in the residuary clause referred to and meant the executors or administrators of the estates of the four sons if any of them were deceased. *Tarrant* v. *Backus,* 63 Conn. 277, 283, 290;

*Johnson* v. *Edmond,* 65 Conn. 492, 498. The residuary disposition does not contravene the statute.

The use of the words "aforesaid children" in the residuary clause is especially significant. In addition to the four sons who were named in the will, the testator was the father of two daughters, both of whom were deceased at the time he made his will. Provision was made for their children in items 6, 7, 8 and 9 of the will by way of legacy or trust fund, but no specific reference to the daughters, as such, can be found other than in item 8 for the purpose of identifying household furniture that was left to two of the grandchildren.

It is my conclusion that the use of the word "aforesaid" in the residuary clause limited the distribution of the residual estate to the four sons, who were specifically mentioned in the will, and their legal representatives and did not include the two daughters and their legal representatives. As applied to the fifty-three acres in issue here, in which Walter had a life estate, it meant that upon the testator's death the remainder vested contingently in John, George and Charles and in the legal representatives of Walter, with the interest of the three other brothers going to their legal representatives if any of them died before Walter. Only Charles survived Walter. He thus acquired an undivided one-fourth interest in the fifty-three acres. The legal representatives of each of the other three brothers, John, George and Walter, acquired an undivided one-fourth.

In 1901, John, George and Charles quitclaimed interest in the fifty-three acres to Walter, as did the three living children of the deceased sisters. The following year, Walter by warranty deed conveyed the entire tract to Christopher L. Avery. He and his heirs held undisputed possession of it until

April 14, 1954, when forty acres were conveyed by warranty deed to the town of Groton. Excluded from the warranty were the claims of the legal heirs of Robert E. and Walter E. Chapman. The town of Groton has constructed a school upon the forty acres it purchased. The other thirteen acres stand of record in the names of the defendants in No. 22737.

As Charles survived Walter, the conveyance of his quarter interest to Walter and Walter's subsequent conveyance of it to Avery were good, and the defendants have an absolute title in fee simple to an undivided one-fourth interest in their respective tracts.

On February 6, 1941, Albert B. Patterson of Noank was appointed by the Probate Court in Groton and has qualified as administrator on the estate of Walter E. Chapman. He is not a party to this litigation. As he is the legal representative of Walter's estate, he should have been made a party. There has been no evidence presented to show whether the estates of John and George have been probated. If there are legal representatives of them, they are not parties to this action. Whether adverse possession would run against the legal representatives of John, George and Walter is a matter that cannot be determined under the pleadings and the proof.

Judgment that the defendants in each case are the owners in fee simple of an undivided one-fourth interest in and to their respective tracts of land and that the defendants are the owners of the remaining three-fourths of said properties, subject to such interests of the legal representatives of John, George and Walter Chapman as may be otherwise determined.